# Philadelphia and Reading Coal and Iron Company's Petition.

*Constitutional law—Townships—Classification—Repeal of statutes—Act of April* 28, 1899, *P. L.* 104.

The Act of April 28, 1899, P. L. 104, entitled " An act to provide for the classification of townships of the commonwealth with respect to their population into two classes, and to prescribe the form of government for townships of each class," is constitutional.

*Statutes—Repeal of statutes—Acts of June* 12, 1893, *P. L.* 451, *and April* 28, 1899, *P. L.* 104.

The Act of April 28, 1899, P. L. 104, relating to the classification of townships into two classes repeals the Act of June 12, 1893, P. L. 451, entitled, " An act enabling the taxpayers of the townships and road districts to contract for making, at their own expense, the roads, and paying salaries of townships or road district officers and thereby preventing the levy and collection of road tax therein."

Argued May 27, 1901.    Appeal, No. 110, Jan. T., 1901, by The Philadelphia and Reading Coal and Iron Company, from judgment of the Superior Court, Oct. T., 1900, No. 108, reversing the order of Q. S. Northumberland Co., No. 70, 1900, in the Matter of the Petition, Bond, Proof of Notice and Order of Court, relating to contract of Township of Coal and the Philadelphia and Reading Coal and Iron Company.    Before McCOLLUM, C. J., MITCHELL, BROWN, MESTREZAT and POTTER, JJ.    Affirmed.

Appeal from Superior Court.    See 16 Pa. Superior Ct. 260.

Petition for an order to direct supervisors to enter into a contract for making and repairing of roads.

W. F. BAY STEWART, J., specially presiding, filed the following opinion:

The Philadelphia and Reading Coal and Iron Company have filed their petition and bond, and given notice to the supervisors and auditors of Coal township of their intention to apply to the court of quarter sessions for an order requiring the supervisors to enter into contract with it for the maintenance and repair of the public roads in the said township for the fiscal

year, beginning March 5, 1900, under the terms of the Act of June 12, 1893, P. L. 451. The supervisors have answered this petition alleging that under the act of assembly, approved April 28, 1899, entitled, " An act to provide for the classification of the townships of the commonwealth with respect to their population into two classes, and to prescribe the form of government for townships of each class," Coal township is a township of the first class, having a population of 300 to the square mile, and that the commissioners of Northumberland county, by their proclamation, have so declared and designated it ; that six commissioners are about to be elected in accordance with said act, and that the act of June 12, 1893, is so far modified as no longer to be applicable to said Coal township, and denying the jurisdiction of this court to order or direct the entering into such contract for the making and maintenance of the roads.

To this the petitioner replies that the act of April 28, 1899, classifying townships, is local or class legislation, and therefore unconstitutional, and that the act of June 12, 1893, is still in force. It is admitted that Coal township has a population of 300 to the square mile. This issue raises the question of the constitutionality of the act of April 28, 1899.

The 3d section of the act provides : " Except so far as modified by the provisions of this act, all existing laws relating to townships shall continue in force until changed, modified, or repealed as to either class of townships by legislation expressly relating thereto." The act provides for the election of a board of five commissioners, and if the population of the townships exceed 5,000, then an additional commissioner for each 2,000 population in excess of 5,000. To this board of commissioners is delegated large legislative powers.

In section 7 it is provided: " All corporate power, authority and franchise of the township shall be vested in and exercised by the board of township commissioners, and the said board shall have particularly the following powers :

".1. To open, grade, construct and repair all public highways, in the township which shall or may be at any time laid out by lawful authority, and to keep the same in good order and repair. To construct footways along said highways, and to establish lights thereon when it may be deemed expedient to do so.

" To accept the dedication of public highways."

Section 9 provides: "It shall be the duty of the board of township commissioners to cause all public highways within the township now or hereafter laid out by lawful authority, to be effectually opened and constantly kept in repair at all seasons, and clear of all impediments to easy and convenient passing and traveling."

Section 10 provides: " The board shall have the power to appoint one or more supervisors or engineers of highways, and by ordinance to specify their duties and to fix their salaries. All such officers shall hold office at the pleasure of the board.

" The board shall cause to be employed a sufficient number of workmen, mechanics, and laborers for the proper care of the public roads, and shall have power to purchase all necessary tools, implements, machinery and materials of all kinds which, in their judgment, shall be necessary for the making, paving and repairing of the public highways."

Section 11 provides: " The board of commissioners shall have power, by their officers and servants, to enter upon any lands or enclosures, to cut, open, maintain and repair all such ditches and drains through the same, as they shall judge necessary, to carry the water from the said roads."

It will be seen by an examination of the sections recited that full power and authority to open, grade, construct, maintain and repair the public roads is vested in the board of commissioners, and they are authorized to appoint one or more supervisors or engineers of highways, to specify their duties and fix their compensation.    The office of supervisor, as elected by the people, is practically abolished, and their substitutes hold their office at the pleasure of the board.

In view of these radical provisions, it cannot be said that the act of June 12, 1893, and all other acts on the subject of the making and maintenance of the public roads and the election, authority and compensation of supervisors in townships of the first class, are not repealed.    A method new and repugnant to the old law is provided.    This is sufficient to repeal the old law: Blake v. Com., 5 W. N. C. 48; Sifred v. Com., 104 Pa. 179.

Where all the essential provisions of an act of assembly are supplied by a later act, the former will be deemed to have been

repealed by implication, although there be no repealing clause : Martz's Contested Election, 110 Pa. 502.

I have no hesitation, therefore, in reaching the conclusion that if the act of April 28, 1899, be constitutional, it repeals the act of June 12, 1893, as to townships of the first class.

But is the act constitutional? The presumption is that it is, and unless it falls within the terms local or special legislation, it is.

The constitution provides in article 3, section 7, clause 2 : " The general assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, boroughs, or school districts."

This legislation does regulate the affairs of townships. Is it local or special? It does not purport to be either, but it does not apply to all townships. It applies only to the townships belonging to a class which is to be ascertained, not by population alone, but by population according to area, that is, townships having a population of at least 300 to the square mile.

It will be seen at once that this is not classification according to population. A township may have 25,000 or 30,000 population, and not be entitled to the benefit of the act, while one having 3,000 population may. So that population is not the only requisite element, nor is it the essential one.

" There can be no proper classification of cities or counties except by population. The moment we resort to geographical distinction, we enter the domain of special legislation, for the reason that such classification operates upon certain cities or counties to the perpetual exclusion of all others :" Patton v. Commonwealth, 88 Pa. 258. This doctrine was repeated with emphasis in reference to a substitute for the act declared unconstitutional in that case, and in which the attempt had been made to escape effect of the reasons assigned in Patton v. Commonwealth : Scowden's App., 96 Pa. 422.

The evident purpose of the act is to legislate for some particular locality, although it is shrewdly drawn in what appears to be general terms. The basis of population alone would not answer. The draughtsman of the bill had locality in his mind, and therefore the element of population had to be qualified so as to fit his locality. This was accomplished by the introduction of the square mile,—population per square mile. With this

modification introduced the law could be fitted to the contemplated locality. This is practically what was attempted in the legislation with reference to Crawford county, and which was condemned in Patton v. Com. and Scowden's App., and it is that which Chief Justice PAXSON denounced as special legislation under the disguise of general law, the most vicious of all legislation.

Whatever may be the features of a general law contained in this act, it is stamped indelibly with this cast of locality, which renders it obnoxious to the constitutional inhibition.

The preamble of the act recites : " Whereas, in those more populous townships of the commonwealth which are in large measure devoted to residential purposes, there is need of a form of municipal government having greater powers than are now possessed by the local governments of townships under existing laws." And the act thereupon proceeds to classify townships for the purpose of government. But the township to which it is here attempted to be applied is not a residential one at all, but a coal mining district, populous, but not devoted to residential purposes. In the picturesque language of the counsel for the petitioners, a township of scrub oaks and culm banks; a mining township, where many of the population live most of the time under the ground. And this same condition seems to prevail in all, or nearly all, the anthracite coal mining portions of the state.

Of course, the preamble is no part of the law, but it can be used to explain the motive or meaning of the legislature or identify the subject-matter of the legislation.

Commonwealth v. Marshall, 69 Pa., 328. With this definition in view, it is plain that the legislature did not contemplate the application of this law to mining regions as a place devoted to residential purposes.

It is said that necessity is the only allowable ground for classification : Ayars's App., 122 Pa. 266, and many other cases.

Therefore the preamble recites the necessity for this legislation. But it will occur to any lawyer in a moment that the form of municipal government having greater powers than are now possessed by the local governments of townships under existing laws may be found in our system of borough laws. This system covers practically every power delegated by this act, and is .

ample, flexible, and suited to residential territory. The method of putting a borough government in force is different, however. Under it a majority of the resident lot or landowners must petition for incorporation. If the majority do not want it, they need not have it, but under this act they are obliged to accept this "municipal government with greater powers nolens volens whenever the population of the town equals 300 to the square mile. It may be that the real design of this act was to take out of the hands of the people the determination of the question of whether they would have a municipal government with greater powers or not, and oblige them to accept it, whether they would or no." But whatever may have been the design, it cannot be said there was any necessity for this legislation, as cited in the preamble, and if no necessity existed, then the act is unconstitutional.

Judging by the long line of decisions, the question of the necessity for classification has become a judicial one, and the courts may declare an act unconstitutional where no such necessity exists: Ayars's Appeal, 122 Pa., 266 and cases cited.

I may say that the same conclusion was reached in the decision of the learned President Judge WOODWARD, of the eleventh judicial district

Being of the opinion for the reasons given, that the act approved April 28, 1899, entitled "An act for the classification of the townships of the commonwealth . . . . with respect to their population into two classes, and to prescribe the form of government for townships of each class," is unconstitutional, and that the act of June 12, 1893, under which this proceeding was begun, is still in force, the contract is directed to be executed as prayed for, and a formal order to that effect will be drawn.

*Error assigned* was the judgment of the Superior Court.

*S. P. Wolverton*, for appellant.—No classification is warranted or legal except that which is based upon necessity: Ayars's App., 122 Pa. 266; McCarthy v. Com., 110 Pa. 243; Scowden's App., 96 Pa. 422; Randolph v. Wood, 5 Cent. Repr. 345.

There can be no proper classification of cities or counties except by population; the moment we resort to geographical

distinction we enter the domain of special legislation : Com. v. Patton, 88 Pa. 260 ; Scowden's App., 96 Pa. 425.

There are 1,522 townships in this commonwealth, and it is safe to say that less than twenty-five are now affected by this act. It is morally certain that the method of classification operates to the perpetual exclusion of more than 1,400 townships, and yet a large number of the excluded townships are more populous than any of those included, and are more consistent in every other respect with the reasons alleged for the necessity requiring such legislation. If this be true, the classification is false.

The act of April 28, 1899, does not repeal the act of June 12, 1893 : Street v. Com., 6 W. & S. 209 ; City of Erie v. Bootz, 72 Pa. 196 ; Sifred v. Com., 104 Pa. 179 ; Safe Deposit & Trust Co. v. Fricke, 152 Pa. 231 ; Com. v. DeCamp, 177 Pa. 116.

*William M. Ryon* and *George B. Reimensnyder*, for appellees.—The act is constitutional: Penna. R. R. Co. v. Riblet, 66 Pa. 164 ; Speer v. School Directors, etc., of Blairsville, 50 Pa. 150 ; Appeal of Warrior Run School District, 192 Pa. 349 ; Van Riper v. Parsons, 40 N. J. L. 123 ; Wheeler v. Philadelphia, 77 Pa. 338 ; Perkins v. Philadelphia, 156 Pa. 554 ; Seabolt v. Commissioners of Northumberland Co., 187 Pa. 318 ; Com. v. Gilligan, 195 Pa. 504 ; Erie & Northeast R. R. Co. v. Casey, 26 Pa. 300 ; Com. v. Blackley, 198 Pa. 372.

The act of 1899 repealed the act approved June 12, 1893, P. L. 451, or so far modified it as not to apply to townships of the first class : Philadelphia v. Kates, 150 Pa. 30 ; Com. v. Macferron, 152 Pa. 244 ; Quinn v. Cumberland County, 162 Pa. 55 ; Bruce v. Pittsburg, 166 Pa. 152 ; Westfield Borough v. Tioga County, 150 Pa. 152 ; Fort Pitt Bldg. & Loan Assn. v. Model Plan Bldg. & Loan Assn., 159 Pa. 308 ; Fox's Case, 1 Pa. Dist. Rep. 513 ; Blake v. Com., 5 W. N. C. 48 ; Sifred v. Com., 104 Pa. 179 ; Martz's Election, 110 Pa. 502 ; Bennett v. Commissioners of Luzerne County, 171 Pa. 221.

OPINION BY MR. JUSTICE BROWN, July 17, 1901 :

Our affirmance of the constitutionality of the act of April 28, 1899, in Com. ex rel. Jones v. Blackley, 198 Pa. 372, disposes

of one of the questions raised on this appeal. In the petition for the allowance of it, one of the reasons given was, that the act had been held to be unconstitutional by a divided court. It is true we were not unanimous; but four of the six members of the court who heard the case, our Brother DEAN having been absent, concurred in the opinion filed by our Brother MITCHELL, and it stands as the judgment of a majority of the whole court. The other question as to the repeal of the act of June 12, 1893, by that of April 28, 1899, is free from difficulty. It seems clear that the two acts are not only repugnant, but that all the essential provisions of the former are supplied by the latter. We can add nothing to what the learned judge, specially presiding below, said upon this question, and, for the reasons stated by him, our judgment is that the act has been repealed. The appeal is dismissed and the decree of the Superior Court affirmed, at the cost of the appellant.