## Travis v. Lehigh Coal & Navigation Company, Appellant.

*Townships—Classification—Townships of the second class—Supervisor —Public officer—Road law—Act of April 28, 1899, P. L. 104 and April 12, 1905, P. L. 142—Constitutional law.*

The Act of April 28, 1899, P. L. 104, had the effect of making all townships in Pennsylvania of the second class, except "those townships having a population of at least three hundred to the square mile, as shown by the United States census," after proceedings taken under the act. All townships are prima facie in the second class and remain there until proceedings are taken in pursuance of the act to create them townships of the first class.

The Act of April 12, 1905, P. L. 142, applies to all townships in a county as second-class townships which have not been established by proceedings under the act of 1899, as of the first class; and in counties where no first-class townships have been established, it applies to all townships.

The Act of April 28, 1899, P. L. 104, relating to the classification of townships is constitutional.

The Act of June 12, 1893, P. L. 451, is repealed by the Act of April 28, 1899, P. L. 104 only so far as townships of the first class are concerned.

A supervisor who was elected after the passage of the Act of April 12, 1905, P. L. 142, in a township in a county where there are no first-class townships, is entitled to the salary or compensation from contractors under the so-called Losch Road Act of June 12, 1893, P. L. 451.

Argued Oct. 15, 1906. Appeal, No. 146, Oct. T., 1906, by defendant, from judgment of C. P. Schuylkill Co., May T.,

1906, No. 205, for plaintiff on case stated in suit of Luke Travis, Supervisor of Blythe Township, v. Lehigh Coal & Navigation Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Case stated to determine right to a salary.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was the judgment of the court.

*F. G. Farquhar*, for appellant.

No appearance nor paper-book for appellee.

*William Wilhelm*, for Henry Dickman, a person interested in the matters involved in the appeal.

OPINION BY MORRISON, J., March 11, 1907 :

This was an amicable action in assumpsit with judgment in favor of the plaintiff for $250, on a case stated in the nature of a special verdict. From the case stated we gather the following facts : that on February 6, 1906, Daniel Shields, the then supervisor of Blythe, township, entered into a contract with the Lehigh Coal & Navigation Company for the making, etc., of the roads of said township, a copy of which contract is attached and made part of the case stated ; said contract was duly and legally made in pursuance of the Act of June 12, 1893, P. L. 451 ; that at the township election held in the township of Blythe on February 20, 1906, the plaintiff, Travis, received the highest number of votes for the office of supervisor of said township ; that the voters of said township at said election voted for but one supervisor for the year 1906, and the plaintiff was the only person who received a certificate of election as supervisor of said township for the year beginning March 5, 1906 ; that in pursuance of said election the plaintiff took the required oath of office and filed his bond as such supervisor, duly approved by the court of quarter sessions of Schuylkill county. If the court, under the above stated facts, shall be of opinion that the said Luke Travis was duly elected

to, and can claim the office of supervisor in said township, for the township year beginning March 5, 1906, and that as such supervisor, he is entitled to receive a salary, under the provisions of said Act of June 12, 1893, P. L. 451, and of the contract hereto attached, then judgment to be entered in favor of the plaintiff for the sum of· $250, otherwise judgment to be entered in favor of the defendant. Upon argument and consideration, the learned court entered judgment in favor of the plaintiff as stated. From this judgment the defendant appealed and assigned the following errors : 1. " The court erred in making the following decree, and now, May 21, 1906, in No. 205, judgment for the plaintiff is directed to be entered for $250 ; and in No. 206 judgment for the defendant is directed." 2. " The court erred in holding in its opinion : The townships of the county have, therefore, never been classified in any way by any proceeding under any act." 3. " The court erred in not holding that the township of Blythe was a township of the second class." 4. " The court erred in holding that the Act of April 12, 1905, P. L. 142, did not apply to Blythe township." 5. " The court erred in not deciding that road supervisors, elected under the act of April 12, 1905, were entitled to no salary or compensation from either the township or a contractor under the Losch road law of June 12, 1893."

The first important question involved is, did the Act of April· 28, 1899, P. L. 104, constitute all townships in Pennsylvania of the second class, with right to be promoted to the first class in the method provided in the act? Second, are road supervisors elected since the Act of April 12, 1905, P. L. 142, went into effect, entitled to any salary or compensation from contractors under the so-called Losch road Act of June 12, 1893, P. L. 451 ?

1. That act is entitled : " To provide for the classification of the townships of the commonwealth, with respect to their population, into two classes, and to prescribe the form of government for townships of each class." The act contains twenty-one sections, but only four of them relate to townships of the second class, to wit : the first, second, third and twenty-first. In our opinion, this act had the effect of making all townships in Pennsylvania, of the second class, except, " those townships having a population of at least three hundred to the square

mile, as shown by the United States census, shall be townships of the first class. All other townships shall be townships of the second class." To make this act general, so it will apply to all of the townships, we think it must be construed to prima facie place them all in the second class. Those townships which by reason of their population are entitled to go into the first class are exceptional and something remains to be done to take them out of the second class and place them in the first class. The method of accomplishing this is plainly provided in the Act of April 28, 1899, P. L. 104, and the amendatory Act of May 11, 1901, P. L. 160. There can be no townships of the first class until the fact has been ascertained that the population equals 300 persons to the square mile, and this must be followed by the action and proclamation by the county commissioners, designated in the two acts of assembly. The learned court below held, that because no action had been taken in regard to Blythe township for the purpose of ascertaining to which class it belonged, therefore it was not a township of the second class, and the provisions of the act of April 12, 1905, did not apply to it because that act referred exclusively to townships of the second class.

We entertain a different opinion as to the effect of the act of 1899. We think it placed, for the time being, all of the townships in the second class. The legislature could not know what townships would be entitled to go into the first class. But the law provided a method for ascertaining the population of the townships and thereby ascertaining those entitled to go into the first class. This construction places all townships existing on April 28, 1899, under the provisions of the act. Now, when the act of April 12, 1905, became a law, it applied to all of the townships of the second class, to wit: all of those which had not gone into the first class, by the methods prescribed in the act of 1889 as amended by the act of 1901. The act of 1899, by its plain terms, provided only two classes of townships and it is plain that these classes embrace all of the townships in a county. To hold that there can be no second class townships in a county until there have been first class townships organized, leaves a large number of the townships in the state not subject to the provisions of the act of 1899, nor of April 12, 1905. We think the legislative

intent was to create townships of the second class by the act
of 1899, without more, and townships of the first class to be
thereafter created in the manner designated by the act. We
cannot think, when the legislature passed the act of April
12, 1905, in regard to townships of the second class, it was
supposed not to apply to the townships in the counties not
having first class townships. The conclusion of the learned
court below seems to recognize three classes of townships, to
wit: first and second class in those counties where first class
townships have been established, but there are a large number
of townships in counties having no first class townships and
they must belong, not to the first or second class, but to a
third class—something unknown to the law. We cannot agree
with this construction of the act of 1899. We think our con-
struction is more reasonable and that it is in accordance with
the legislative intent. We think when the act of April 12,
1905, became a law it operated upon all townships not then es-
tablished as of the first class.

The act of 1899 is constitutional: Commonwealth v. Blackley,
198 Pa. 372; Coal Township, 16 Pa. Superior Ct. 260. These
cases also decide that the Act of April 28, 1899, P. L. 104, re-
peals the Act of June 12, 1893, P. L. 451, so far as townships
of the first class are concerned. However, we do not regard
that point as important to the present case, because none of the
cases are meant to decide that the act of 1893 is repealed as to
townships of the second class.

In Com. v. Blackley, 198 Pa. 372, the constitutionality of the
act of 1899 was squarely affirmed in a per curiam affirming the
court below. The coal township case supra was an appeal to
the Superior Court from the decision of the court below hold-
ing the act of 1899 unconstitutional, and if not unconstitutional,
that it repealed the act of June 12, 1893, in so far as it con-
cerned townships of the first class. We affirmed the latter
point but reversed the judgment and held the act of 1899 con-
stitutional. From our judgment there was an appeal to the
Supreme Court: Phila. & Reading Coal & Iron Company's
Petition, 200 Pa. 352. There the Supreme Court said: "The
appeal is dismissed and the decree of the Superior Court af-
firmed." In the opinion by Mr. Justice BROWN the printer
has evidently used the word unconstitutional where he should

have used constitutional. Further along in the opinion, Mr. Justice BROWN says, in substance, that the act of April 28, 1899, repeals the Act of June 12, 1893, P. L. 451. In his opinion he refers to the opinion of the judge of the court below. But he only held the act of 1893 repealed in so far as it concerns townships of the first class, and that is just what we decided in Coal Township, 16 Pa. Superior Ct. 260, and the Supreme Court unqualifiedly affirmed us. It is, therefore, evident that Justice BROWN's opinion can only mean that the act of 1893 is repealed as to townships of the first class.

2. We now come to the next question, was the plaintiff elected under the provisions of the act of April 12, 1905, and is he entitled to compensation for his services from contractors under the act of June 12, 1893? We are of the opinion that if the plaintiff was elected supervisor of Blythe township on February 20, 1906, his election was under the provisions of the Act of April 12, 1905, P. L. 142. Having reached the conclusion that Blythe was a township of the second class, the plain terms of the first section of the act, last cited, required the voters to elect supervisors on the third Tuesday of February, 1906. Whether or not they should elect one or more supervisors. depended upon the condition of their board as to the number of supervisors elected at former elections and the length of their respective terms of office.

The appellant attempts. to raise the question· of the right of supervisors to compensation for their services under the act of April 12, 1905, but that question is not raised in the case stated and we decline to decide it as its decision is wholly unnecessary in the present case.

The important question is, can the plaintiff who claims to have been elected supervisor after the act of April 12, 1905, was.passed, to wit: on February 20, 1906, recover from the defendant the salary provided in the so-called Losch road act of June 12. 1893? The third paragraph of the fifth section of that act requires the contractor who undertakes to open, make and repair the · roads to pay to each supervisor or road commissioner the sum of $250. This is the basis of the judgment granted by the court below in favor of the plaintiff. The 16th section of the act of April 12, 1905, contains the following: " All acts or parts of acts, general, special or local inconsistent

herewith or supplied hereby be and the same are hereby re-
·pealed : Provided, however, that the act, entitled an act en-
abling the taxpayers of townships and road districts to contract
for making, at their own expense, the roads and paying salaries
of township and road district officers and thereby preventing
the levy and collection of road tax therein, approved June 12,
1893, . . . . shall not be repealed hereby but shall continue in
full force and effect." In our opinion the legislative intent
disclosed by the acts of 1893, 1899 and 1905, clearly allows
supervisors in a second class township, where a taxpayer has
contracted to make, open and repair the roads, under the act
of 1893, to collect the salaries provided in the fifth section of
that act. This for the reason that the act of 1905 expressly
saves from repeal the provisions of the act of 1893 rendering
the contractor liable for supervisors' and road commissioners'
salaries. We therefore conclude that the learned court did
not err in entering judgment for the plaintiff on the facts in
the case stated.

The liability of the defendant is clear under its contract of
February 5, 1906, made part of the case stated, and the pro-
visions of the act of June 12, 1903.

By reason of the learned court below filing one opinion in
two cases something appears in the assignments of error and
argument about the case of the Supervisors of Schuylkill Town-
ship v. The Lehigh Coal and Navigation Co., No. 206, May T.,
1906, wherein the court entered judgment in favor of the de-
fendant. That case is not before us on this appeal and we
indicate no opinion as to it. It is only referred to because it
appears in the case of Travis, supervisor, now under considera-
tion.

We may say, to avoid any future misunderstanding, that
Luke Travis, plaintiff, appears to have a prima facie right and
title to the office of road supervisor .of Blythe township, for
the year 1906, and we cannot try such right and title in this
suit. Therefore it is assumed that he is a road supervisor for
at least one year from the second Monday of March, 1906, by
virtue of the election of February 20, 1906.

The first assignment of error is not sustained ; the second
assignment is sustained pro forma, but it is not material in
this case and it does not call for a reversal of the judgment.

The same may be said as to the third assignment and also as to the fourth. The fifth assignment is not sustained.

The judgment is affirmed.