### MERTON J. LYNCH'S ADMR. *v.* CENTRAL VERMONT RAILWAY COMPANY.

May Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed October 22, 1915.

*Judicial Notice—Geography—Master and Servant—Injuries to Servant—Federal Employers' Liability Act—Declaration —Sufficiency—Interstate Commerce—Scope of Employment —"Inspection" — Evidence — Admissibility — Experts — Cross-examination — Contributory Negligence — Review — Transcript—Matters Reviewable—Necessity of Objection and Ruling—Harmless Error—Death—Damages—Verdict —Judgment Non Obstante.*

The sufficiency of a declaration cannot be tested by a motion to dismiss.

This Court will take judicial notice of the geography of the State.

In an action against a railroad company for the wrongful death of its assistant roadmaster, evidence *held* sufficient to sustain the finding that the train whereby decedent was killed was engaged in interstate commerce, within the Federal Employers' Liability Act.

A train that is transporting any goods shipped from without the State to points within the State, or goods destined to points without the State, whether taken aboard within or without the State, is engaged in interstate commerce.

Evidence *held* to sustain the findings that an assistant roadmaster was killed by a train engaged in interstate commerce while he was in-

specting a broken brake beam thereon which was liable to injure
the roadbed and that, therefore, he was engaged in interstate com-
merce, within the meaning of the Federal Employers' Liability
Act.

On the evidence, whether a division roadmaster whose duties were to
inspect and keep safe the roadbed, and who was killed while in-
specting a broken brake beam on a freight car, was acting within
the line of his duty, was for the jury.

In an action under the Federal Employers' Liability Act for the death
of an assistant roadmaster, killed while inspecting a broken brake
beam under a car to which no engine was attached, and where he
went after hearing the conductor send a message to the engineer
not to move the train, on the evidence, the negligence of the de-
cedent, if any, did not, as matter of law, make remote that of the
trainmen from whose action in starting the train the death re-
sulted.

In an action against a railroad company for the wrongful death of an
employee, testimony of the conductor of a freight train that the
brakemen and engineer were subject to his directions could not
be complained of by defendant on the ground that the book of
rules was the best evidence, where it was admitted that some
matters might not be covered by the book of rules, and the con-
ductor had already testified, without objection, that he had charge
of the train and of the employees thereon.

Mere immateriality of admitted evidence does not vitiate unless it is
also harmful.

The overruling of the objection to testimony that the witness must
have expert knowledge in order to give it, and that the witness
had not qualified as an expert, is an implied finding of any req-
uisite qualification.

An exception without either a ruling or an objection reserves no ques-
tion.

Rulings in regard to the admissibility of testimony that was all in
accord with the claims of the exceptor will not be considered on
review.

In an action for the wrongful death of a railroad employee, the ad-
mission of a rule from a superseded book of rules, if error, was
harmless, where the only ground indicated on review for its re-
jection is that it was misleading, but the respects in which it
was misleading are not pointed out.

In an action against a railroad company for the wrongful death of its assistant roadmaster, where defendant's roadmaster had testified as an expert as to the duties of decedent, it was proper to allow him to be cross-examined as to the duties of decedent in various situations, regardless of whether they were involved in the situations presented by the evidence.

In an action against a railroad company, under the Federal Employers' Liability Act, for the death of an employee, testimony that decedent's daughter was wholly dependent on him for support was admissible, as it showed the actual pecuniary loss resulting to the daughter from the death of her father.

On review, portions of the transcript not referred to will not be considered, and portions referred to for designated purposes will not be considered for other purposes.

A defendant's motion for judgment *non obstante veredicto* cannot be entertained.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1912, Franklin County, *Fish*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Harry B. Amey* and *C. S. Palmer* for the defendant.

*Elmer Johnson* for the plaintiff.

HASELTON, J. This case, having once before been argued, was by the Court ordered to be re-argued, and at the May Term, 1915, a re-argument was had before the Court as now constituted.

The plaintiff is administrator of the estate of Merton J. Lynch, who was a division roadmaster of the defendant, and who was killed December 15, 1910, in an accident on the defendant's road. The declaration alleges that the plaintiff's intestate was injured through the negligence of the defendant's servants, and is brought under the Federal Employers' Liability Act of 1908, as amended, to recover for the benefit of the widow and child of the deceased.

Trial by jury was had, and verdict and judgment were for the plaintiff. The defendant excepted.

Before any evidence was taken the defendant filed a motion to dismiss on the ground of the claimed insufficiency of the allegations, and at a later time the motion was renewed. The motion was overruled and the defendant excepted. The sufficiency of the declaration could not, however, be tested by a motion to dismiss. *Alexander* v. *School District,* 62 Vt. 273, 19 Atl. 995; *Marsh* v. *Graves,* 68 Vt. 400, 35 Atl. 335; *Noyes* v. *Hyde Park,* 73 Vt. 261, 50 Atl. 1068; *Clement* v. *Graham,* 78 Vt. 290, 305, 306, 63 Atl. 146, Ann. Cas. 1913 E, 1208.

This motion in one of its subdivisions, claimed that the court was without jurisdiction. But the declaration was very clearly under the Federal Employers' Liability Act, and the court below had jurisdiction and was bound to take jurisdiction.

Mr. Lynch was killed at West Hartford by the wheels of a car that constituted a part of a freight train running on the day in question from St. Albans to White River Junction. One of the allegations of the declaration is that in moving this train the defendant was engaged in interstate commerce. To the proof of this necessary allegation the plaintiff addressed himself early in the trial. In the examination of his first witness, who was the conductor of the train, one Culley, the plaintiff drew out from the witness testimony to the effect that he made out a report to the company of each trip made by him, and that he could probably tell by his report as to the trip in question, where the cars in the train came from and where they went to. Thereupon the plaintiff gave notice to the defendant to produce the report as to this train and to produce also any other papers it might have showing where the freight carried by this train came from and where it was destined to. Later the plaintiff called attention to this request, and one of the defendant's attorneys stated that he had made application to Mr. Soule, a superintendent of the defendant, who had said that he had passed the papers in question over to the attorney. The attorney added that when he went to the office he could probably find them, that they were papers he got with reference to the cars on that train, that he remembered they were in his file, didn't know how they got out of it, and that he would use all efforts to find them. Mr. Soule, above referred to, a superintendent of the defendant, in change of several districts, including the place where Mr. Lynch was killed, was afterwards called as a witness by the plaintiff, and testified that the company kept records that would

show the contents of that train and that he had access to such records. Later he testified that the records had been searched and that the paper wanted could not be found, but that there was a memorandum indicating that it had been abstracted for some purpose. Still later the plaintiff called to the witness-stand the attorney for the defendant who had made a statement regarding this matter, and he, being interrogated, said he was not sure about the record, but that some record was taken from the transportation department to his office, that he was inclined to think it showed what was in this train, that he wasn't absolutely certain that it would show whether the traffic was interstate or intrastate, that he had never looked at the document as the case had been put over to a later time, that he hadn't considered the importance of the matter; that every effort was being made to find the missing document, and that if it was found before the case was concluded it would be produced. The document was not produced. So, as the evidence stood, a paper apparently decisive of one question in the case, was lost, and no one admitted knowledge of its contents.

At the close of the evidence the defendant moved for the direction of a verdict in its favor, and one of the grounds of the motion was, in substance, that there was no evidence tending to show that the train in question was engaged in interstate commerce. This claim is very strenuously relied on in argument before this Court.

But although the defendant had lost or mislaid the record, which it was its duty to produce if it could, the plaintiff, as the situation had been developing, had been endeavoring to show by circumstantial evidence that the train carried freight that in the character of its shipment was interstate.

The conductor testified that the train consisted of 52 cars, that freight of all kinds and from all points was in the cars, that the train was an extra train made up at St. Albans, that none of the cars were empty, that no cars were left anywhere between St. Albans and White River Junction, that the train was called a dairy train, that it carried some dairy products, butter and eggs, that he couldn't tell where the freight came from that was carried that day, that he didn't recollect for certain whether or not there were cars of beef that came from the West, that he couldn't say for certain whether any of these 52 cars taken to White River Junction were bound for points out

of the State, that he couldn't say where the produce carried that day came from, that some of the produce comes from the West sometimes, and generally in full cars.

Mr. Soule, the superintendent already referred to, testified that the road did an interstate traffic, and that such traffic constituted a good deal of the tonnage carried. He testified that the company runs local freight trains and through freight trains. A through freight train he said is "marshalled" at St. Albans and destined to Burlington, Montpelier or White River Junction, as the case may be, and handles, as a rule, cars destined to or beyond those points, that if the company had several cars of dairy products that came into St. Albans from the West destined for Boston and Providence they would be taken from St. Albans to White River Junction by being marshalled in some extra south bound train. He twice asserted that the company never "started" a train from St. Albans with 52 cars, distinguishing apparently between starting a train and "marshalling" cars in a train.

We take judicial notice of the geography of the State and we are fully satisfied that the evidence, a part of which we have referred to, amply warranted the inference that this train of over fifty loaded cars taken unaltered from St. Albans across the State to White River Junction, carried in part at least, freight which was in process of interstate transportation.

If the train was transporting any goods shipped from without the State to points within the State, or any goods destined to points without the State, whether taken aboard within or without the State, it was engaged in interstate commerce. The defendant claims that from the evidence with regard to this long train of loaded cars running across the State over a road which was confessedly a highway of interstate commerce, it is just as probable that all the freight started from points within the State and was to be left at points within, as otherwise, that there was no evidence upon which to base a fair and reasonable inference that some of this freight "of all kinds" including dairy products, was matter of interstate commerce.

Suppose that the plaintiff had brought his action under our State statute, modelled on Lord Campbell's Act, and the defendant had claimed on the evidence here that there was room for a fair inference that the train was, to some extent at least, engaged in interstate commerce. Would the defendant or any-

one else be satisfied with a ruling that there was nothing for the jury on that question? We think not. We dismiss this question without further comment, and without discussing the question of the inferences, if any, permissible from the failure to produce the lost or mislaid documents, or the question of whether the failure to produce was satisfactorily explained. The plaintiff on the trial below stated that he did not charge bad faith in the matter. On the circumstantial evidence introduced it was for the jury to say whether or not the train in question carried articles of commerce which were in course of interstate transportation. *No. Carolina R. Co.* v. *Zachary,* 232 U. S. 248, 258, 259, 34 Sup. Ct. 305, 58 L. ed. 591, Ann. Cas. 1914 C, 159; *Barney's Admr.* v. *Quaker Oats Co.,* 85 Vt. 372, 82 Atl. 113.

Another ground of the motion for a verdict in favor of the defendant was that there was no evidence that Mr. Lynch at the time in question was engaged in interstate commerce. The evidence was to the effect that it was his duty to look after the track in question, to see that it was kept in a safe condition for travel, that in the course of his employment he boarded the train in question at Montpelier and rode to West Hartford, that there a brake-beam under the caboose was dragging on the ground, that this condition was noticed by him and the conductor while the train was taking a passing track to allow passenger trains to pass, that the train was divided, that the conductor, in the hearing of Mr. Lynch, sent word to the engineer by the brakeman not to move the train until the car was repaired, that the conductor set about the repairs and that Mr. Lynch went to the station. According to the evidence if no repairs had been made the track might have been damaged and so might a switch, and there might have been a derailment, and derailments are apt to injure the track. Before going to the station Mr. Lynch said to the conductor, referring to the condition which existed under the caboose, that it would have to be repaired before they could go any farther. The conductor got his tools, got underneath the car and took off the parts that were out of place. After he had been working about ten minutes Mr. Lynch came to the car where the conductor was working. The conductor then had a chain on the brake-beam, and he then got out from under the car and went inside it to get a cord to finish his work. He came back in about a minute and found Mr. Lynch over the rail with his hands where the

conductor had been working, holding the end of the chain that the conductor had on the brake-beam. The chain was directly over the rail. The conductor got down to tie the chain up with a cord, when the train started up. The conductor got out of the way, but the wheels ran over Mr. Lynch. Assuming now that Lynch was in the line of his duty we think there is no question but that there was evidence from which it could be inferred that he was engaged in interstate commerce. The jury found that the train was an interstate train, this slump which let down the brake-beam had to be fixed up before the train could go farther, and from the testimony the jury could well infer that the division roadmaster got where he did for the purpose of inspecting the repairs, for his attitude and the act he was engaged in made it permissible to infer that. *Myers* v. *Pittsburg Coal Co.*, 233 U. S. 184, 193, 58 L. ed. 906, 34 Sup. Ct. 559.

But the defendant claims that Lynch was acting outside the scope of his employment, and that as to what he was doing at the time of the accident the relation of master and servant did not exist between him and the defendant.

The defendant showed by its witnesses that it was the duty of Mr. Lynch as division roadmaster to look after the track and roadway, to have charge of it, that there were no printed rules to guide him in the discharge of that duty, that in the performance of his duties it was necessary for him to rely very largely, and to act very largely, upon his own judgment as to what should be done in a given case.

The claim that Lynch was outside of the line of his duty was based upon testimony to the effect that under no circumstances would it be his duty to have anything to do with the repairs of a car or with the inspection of repairs on a car.

Some expert testimony on this point was introduced by the defendant.

Mr. Elrod, the roadmaster of the Central Vermont Railway Company, testified that in an assumed state of facts, it would not be the duty of the assistant roadmaster to do anything at all towards the repairs of a car when it was discovered that something was the matter with a brake-beam, and that the assistant roadmaster had no such duty in respect to the car in question on December 15, 1910, that it would be no part of his duty to look at the car for any purpose.

Charles E. Severance, roadmaster of the St. Johnsbury and Lake Champlain Railroad and track supervisor for the Boston and Maine Railroad, testified, in answer to a hypothetical question essentially the same as that put to Mr. Elrod, that in the case supposed it would not be any part of the duty of the assistant roadmaster to assist in the repairs, and that he would not have any business to look, or any duty to look, to see whether the repairs were made or not. It was conceded that Thomas Landers, an assistant roadmaster on the Canadian Pacific Railway, would, if called, give the same testimony as that given by Mr. Severance, and that it might be taken that he had so testified. Mr. Soule, already referred to, testified in answer to a similar hypothetical question, that it would not be the duty of the assistant roadmaster to make the repairs under any circumstances or to have anything whatever to do with the repairs, that if he couldn't get away on the train he was traveling on he should take some other train and let the conductor look after his car.

This opinion gives the judgment of the witnesses as to what a division roadmaster should have done in circumstances a part of which are stated.

But against this is the testimony of Mr. Elrod, the defendant's roadmaster, that much is left to the judgment of the division roadmaster as to what course he shall take in a given case, and that much was left to the judgment of Mr. Lynch, of whose understanding of his duties and fitness for his position no question was made. The exceptions recite that he was a competent man of long experience who understood his duties thoroughly, and this recital is not challenged. More important yet, all the questions put to the experts omitted reference to the fact that the repairs in question involved taking care of a brake-beam that was dragging on the track when the train was stopped and the repairs undertaken. On facts which the evidence tended to show the duties of the conductor and the division roadmaster coalesced to a certain degree, a situation which the defendant ignores throughout. It was, on the evidence, the duty of the conductor to temporarily repair the car. And the evidence also tended to show that the dragging brake-beam was a menace to the track and the train, as the train was to go on, and as the obvious way to remove this thing from the track was not to tear it off from the car and throw it to one side, but to tie it up to

the car in some way so that it would not drag, there was evidence from which it could be inferred that the division roadmaster, who was charged with the care of the track, had an incidental duty, in reference to the repairs, which gave the duties of the conductor and those of the division roadmaster a common point of contact. In order to reconcile all the parts of the evidence with each other and with good practical sense, it must be said that if the jury found, as they might, on the evidence, that a condition existed which threatened to tear up the track or make it unsafe, or cause a derailment if the train went on, then Mr. Lynch would not be outside of his duty in looking to see if the threatened danger to his track had been removed, merely because that danger proceeded from a broken-down part of a car.

The declaration alleged that it was the duty of Lynch to keep the track in repair and in a safe and secure condition for the running of trains and the moving of interstate traffic thereon, that he knew that the condition which required repair was liable to damage the track and wreck the train in question, and that he went under the car the better to see what repairs had been made by the conductor and whether the danger to the track had been removed. These allegations the evidence tended to prove, and so to indicate that Lynch was not outside of his duty under his employment at the time he was run over.

In the brief on re-argument the defendant says that at the time of the injury Lynch was not inspecting the repairs, but was assisting the conductor by holding up the chain, and that in so doing he was doing an act wholly without any allegation in the declaration. The defendant in the brief referred to, says that it is clear that for some minutes before the accident, the inspection, if any there was, had been made, and that thereafter the decedent remained to assist the conductor by holding up the chain. But the evidence is to the effect that Mr. Lynch stayed away from the car until the repairs were practically completed, all but tying a chain up, and that what Mr. Lynch did was within the space of a minute, while the conductor was out from under the car getting a cord to tie up a chain as a final repair. The fact that when the necessity for repairs was apparent Mr. Lynch went to the station and returned to the car only when he did, tends to show that it was not the work of repairing, but the inspection of repairs, that he was engaged in,

such inspection as is within the scope of the declaration. Inspection includes, ordinarily, something more than the use of the eyes, and the fact that Mr. Lynch was holding the chain which the conductor had got around the brake-beam was in no way inconsistent with the idea of inspection. He was holding it, and was in a position to examine what had been done, when the conductor was not where he could tie up the chain, and this circumstance points to inspection rather than to assistance.

It was for the jury to say on the evidence, and under proper instructions, whether or not the particular service in which Lynch was engaged was a part of interstate commerce, and whether or not he was rendering that service in the discharge of his duties as an employee of the defendant. Second Employers' Liability Act, 223 U. S. 6, 7, 59, 32 Sup. Ct. 169, 56 L. ed. 327, 38 L. R. A. (N. S.) 44; *Pederson* v. *Delaware etc. R. Co.,* 229 U. S. 146, 57 L. ed. 1125, 33 Sup. Ct. 648, Ann. Cas. 1914 C, 153; *North Carolina R. Co.* v. *Zachary,* 232 U. S. 248, 58 L. ed. 591, 34 Sup. Ct. 305, Ann. Cas. 1914 C, 159; *Illinois etc. R. Co.* v. *Behrens,* 233 U. S. 473, 58 L. ed. 1051, 34 Sup. Ct. 646, Ann. Cas. 1914 C, 163; *Seaboard Air Line Ry.* v. *Padgett,* 236 U. S. 668, 59 L. ed. 777, 35 Sup. Ct. Rep. 481, 482; *New York etc. R. Co.* v. *Carr,* 238 U. S. 260, 59 L. ed. 1298, 35 Sup. Ct. Rep. 780.

One ground of the motion for a verdict was that there was no evidence of negligence, on the part of the defendant, which was a proximate cause of the injury. About the facts and circumstances which the evidence tended to show we here particularize somewhat. When the train took the passing track it was divided into two sections separated by several car lengths, the caboose, the rear car, being a part of the section to which no engine was attached. Before beginning the repairs the conductor, in the presence and hearing of Lynch, told the brakeman to tell the engineer that they were not to move until the car was repaired. It was the duty of the brakeman to take the message to the engineer, and the brakeman started towards the engine. It was the duty of the engineer to obey the message. However, without further orders from the conductor, the forward section of the train backed slowly up, after a little while, and coupled with the rear section, and then started forward causing the accident. The conductor who was attending to his duties, did not know of what the engineer was doing until the

car started. The engineer testified that the brakeman did not deliver the conductor's message. The brakeman did not testify on the trial; he was not then in the employment of the defendant. It did not appear that either party knew of his whereabouts. The evidence tended to show that the injury was attributable to the negligence of the brakeman or of the engineer or both as a proximate cause. Whether such negligence of these employees of the corporation is to be deemed the negligence of the corporation is immaterial under the Federal Act. The corporation is made answerable for the negligence of such employees. The bill of exceptions and this opinion spoke of "the brakeman" on this train instead of speaking of a brakeman or one of the brakemen, and the explanation of the language used is found in the testimony of the conductor, from which it appears that at the time in question, there was only one brakeman on the train, that the other brakeman had been left somewhere "up the line" and was expected along on a passenger train.

The motion for a verdict raises the claim that as matter of law Mr. Lynch was outside the scope of his employment, that he was negligent, and that his negligence was the proximate cause of the injury to him, and relieves the defendant from liability.

That there was evidence tending to show that Lynch was not outside of the scope of employment we have already decided. If he was negligent, after hearing the order of the conductor, in going under the car to which no engine was attached, it certainly cannot be said as matter of law that his negligence made remote that of the trainmen named, and relieved the defendant from liability. *Grand Trunk Ry. Co.* v. *Lindsay,* 223 U. S. 42, 47, 49, 58 L. ed. 838, 34 Sup. Ct. 581, Ann. Cas. 1914 C, 163.

There was no ground of the defendant's motion for a verdict which required the court to take the case from the jury, and the motion was rightly overruled. Some exceptions were taken during the admission of the evidence.

T. F. Culley, conductor of the train in question, who had been in the employ of the defendant for many years testified, under objection and exception, to the effect that the brakemen and engineers are subject to the direction of the conductor. The objection made was that the book of rules was the best evi-

dence, but, in making the objection, the defendant admitted that some matters might not be covered by the book of rules. Without objection the witness had already testified that the conductor has charge of the train and all the employees on it. In the course of the trial it developed that there was no dispute as to the subordination of the other trainmen to the conductor. Respecting this matter there was nothing of which the defendant has reason to complain.

Conductor Culley was allowed to testify, as the result of his observation and knowledge, as to the duties of the division roadmaster to look after the road and keep it right in case a condition existed that was likely to result in injury to the track. The objection to this testimony was that one must have expert knowledge in order to give it, and that the witness had not qualified as an expert. But the court in overruling the objection is taken to have found the witness so far qualified as to make the testimony proper, and the tacit finding that he was qualified was warranted by the testimony which he gave as to his experience and observation. A part of the testimony was objected to as immaterial, but it is not suggested that if it was, it was harmful, and mere immateriality does not vitiate. This testimony was not harmful for it coincided in every material respect with the evidence in respect to the duties of a division roadmaster, introduced by the defendant itself at a later stage of the trial.

Conductor Culley testified to a long-continued practice on the part of the employees of the railroad company of leaving their particular work and affording relief in case of trouble from some unusual happening. The questions in that regard were objected to on the ground that such a practice had not been brought home to the knowledge of the deceased, and because, in one case, the question was too general.

The objection to one question added to the specific ground of objection stated the general grounds of incompetency, irrelevancy and immateriality, but we need only consider the specific ground pointed out.

The plaintiff recognized the necessity of bringing the practice home to the knowledge of the deceased, and claims to find evidence having that tendency; and this claim is sustained.

One or two of the answers relating to this matter wandered somewhat from the questions, but no exceptions were taken to

those answers, as appears by the transcript of the evidence which is made controlling. This testimony did not support any allegation in the declaration, but the attention of the court was not called to that fact, and from a review of all the testimony taken as the trial proceeded we think that, if that ground of exception had been stated, it could fairly be said that the testimony was harmless.

Conductor Culley testified, without objection, as the transcript of the evidence shows, that in case of such a trouble as was being talked about, if the conductor or brakeman neglected to make repairs, he thought the division roadmaster would have some duty with respect to repairs. Asked what his duties would be he said, "to repair it, or have it repaired by some one." Neither this question nor answer was objected to, but the defendant excepted. However, an exception without either a ruling or an objection is unavailing. *Sheldon* v. *Wright,* 80 Vt. 298, 304, 67 Atl. 807.

The plaintiff called as a witness Nicholas Stewart, a railroad man of long experience on the road operated by the defendant. He testified that in the course of his employment he had learned what the duties of the various employees, including division roadmasters, were, that the division roadmaster had charge of the track and the right of way, to see that the track was kept in order for safe travel over it. The court found that he was not an expert. Considerable time was taken in the examination of the witness Stewart, but all that he was allowed to testify to was in accord with the testimony and claims on the part of the defendant. For that reason we are excused from considering the exceptions to rulings regarding the admissibility of his testimony.

Some of the testimony of C. E. Soule, superintendent of the road, was taken under objection and exception, on the ground that it was incompetent, irrelevant and immaterial. It was from the office to which Mr. Soule had access that the record showing the character of the freight on this train had been taken. Some of the evidence that was objected to has been stated. The rest was of like character. Taken together with the whole of his testimony and in connection with the testimony of the conductor, the testimony of Mr. Soule that was objected to was admissible. We have already remarked upon the sufficiency of the whole as circumstantial evidence to take to the jury

the question of whether the train in question was engaged in interstate commerce.

Under objection and exception a rule from a book of rules which had been superseded before the accident, was introduced in evidence, on the ground that it was similar to a rule in force and was found in a book which Mr. Lynch was shown to have studied.

The plaintiff was endeavoring to show that Mr. Lynch understood a rule in force which had been admitted. The rule objected to differed from the one admitted without objection, in that it specifically enjoined upon the roadmasters the duty of enforcing the regulations of the road in their respective departments. Whether or not this evidence tended, as was claimed, to show that Mr. Lynch knew the rule or rules in force, the evidence was harmless to the defendant. Superintendent Soule testified that Mr. Lynch certainly understood his business, that he closely applied himself to his business, and that they considered that he understood the rules applicable to his department and his work. The general roadmaster testified that Mr. Lynch knew his business and had to understand the rules to keep his position. On this point the testimony was all one way. There was nothing prejudicial about the language of the obsolete rule itself, and the defendant did not object to it on any such ground. One of the briefs here suggests that the rule could be of no possible use except to mislead the jury, but does not point out or intimate in what way it could have been misleading. The error, if such there was, must be regarded as entirely harmless.

Mr. Elrod testified in behalf of the defendant as to duties of an assistant roadmaster as we have stated. He was cross-examined as to the duty of the assistant roadmaster in various situations and circumstances. Among other things he was asked if it would be his business, if he was present at a point where the main line was blocked, by reason of trouble with the rolling stock, to help clear up the main line so traffic could move, and said it would. This particular question was objected to as assuming a situation that didn't exist in this case, and an exception was taken to the ruling of the court allowing it, and after it was answered the court was asked to strike out the answer on the ground that it related to a condition not in the case. The plaintiff claimed that this examination was proper

in testing the knowledge of the witness by way of cross-examination, and the court permitted the answer to stand and allowed the defendant an exception. The witness had testified as an expert and given opinion evidence as to the duty of the assistant roadmaster in a supposed case, and the plaintiff had a right to cross-examine in this way, as to the duty of the assistant roadmaster in various situations, whether or not they were involved in the situation presented by the evidence, for it was the plaintiff's right to have it appear how much the witness knew about the duties of an assistant roadmaster.

The plaintiff's intestate was at the time of his fatal injuries forty-six years of age, had been in the railroad service since he was seventeen years old, and had been division roadmaster for nearly fourteen years. He left a widow and an unmarried daughter about seventeen years of age at the time of his decease.

The verdict in favor of the plaintiff was for $8,000. The defendant moved to set aside the verdict on the ground that the damages were excessive. The defendant does not here claim that that motion should have been granted, but it argues that there was error in the testimony relating to the question of damages.

On the question of the pecuniary damage to the daughter from the loss of her father, the plaintiff called four witnesses, A. N. Blanchard, Dr. William Brock, Mrs. Lynch and the daughter herself, whose testimony taken together, tended to show that the daughter was a confirmed invalid afflicted with curvature of the spine, and that for the lack of strength she had never been able to do work to care for herself; and that her father had been attentive to her wants and had provided for her necessities and her comfort.

Answers to a few questions in this regard were taken subject to objection and exception, but the objections have no force when those answers are viewed as a part only of the testimony on the subject.

Mr. Blanchard testified that the Lynchs boarded in his family for a while and testified, under objection and exception, that the daughter's physical condition was one of sickness.

Dr. William Brock testified that he had given Miss Lynch professional treatment and that her trouble was spinal curvature, something which affected her strength, that he treated her

for about a year. Some of this testimony of the doctor was taken under objection and exception.

With regard to the testimony of Mr. Blanchard and Dr. Brock the argument here, and the whole argument of the defendant, is that "the fact that the daughter was ill some time and examined by a physician is immaterial." But this testimony went in corroboration and explanation of testimony given by Miss Lynch herself that she had never been able to take care of herself because she was not strong enough, and testimony of her mother tending to show that the daughter had never been well and was not physically able to earn her living. And the importance of this evidence as to the infirmity of the daughter lay in the fact that the uncontradicted testimony was that Mr. Lynch provided for his daughter everything that she needed, everything that she wanted, provided for her in the best way. Objection, indeed was made and exception taken to the ruling permitting Miss Lynch to testify as she did that she had never been able to take care of herself because she was not strong enough, that her back troubled her in a good many ways, that it affected her strength. In testifying as to her permanent infirmity she dropped into the present tense, and so, for that reason apparently, the defendant argues that its exceptions were well taken on the ground that her evidence related to a time subsequent to her father's death and after she reached her majority. The further argument is made here that the exceptions relating to her testimony were well taken on the ground that the questions and answers were too general to give the jury any intelligent information. But we find her testimony quite informing. The exceptions relating to her testimony have no merit.

All the testimony as to damages was directed to the ascertainment of the pecuniary loss to the widow and the daughter consequent upon the death of Mr. Lynch. There was no attempt to excite sympathy, but the elements of pecuniary damage and those alone, were laid before the jury.

The evidence objected to had a tendency to show the actual pecuniary loss resulting to this child from the death of her father. *Norfolk etc. Ry. Co.* v. *Holbrook,* 235 U. S. 625, 629, 59 L. ed. 392, 35 Sup. Ct. 143; *Gulf etc. R. Co.* v. *McGinnis,* 228 U. S. 173, 176, 57 L. ed. 785, 33 Sup. Ct. 426; *American R. Co.* v. *Didricksen,* 227 U. S. 145, 149, 57 L. ed. 456, 33 Sup. Ct. 224;

*Michigan etc. R. Co.* v. *Vreeland,* 227 U. S. 59, 70, 72, 57 L. ed. 417, 33 Sup. Ct. 192, Ann. Cas. 1914 C, 176, and note 181; *St. Louis etc. R. Co.* v. *Craft,* 237 U. S. 648, 59 L. ed. —, 35 Sup. Ct. Rep. 704; *Kansas City etc. Ry. Co.* v. *Leslie,* 238 U. S. 599, 59 L. ed. 1478, 35 Sup. Ct. Rep. 844.

The defendant submitted requests to charge and excepted to the failure of the court to comply with six of these requests, and also to the failure of the court to charge upon certain matters not covered by the requests. The defendant also excepted to the charge as given upon certain points. But the bill of exceptions does not set out the charge, or any portions of it, nor show in any way whether there was any failure to charge or what the charge was, in any of the respects complained of, or in any other respect. Nor is the charge incorporated by reference. Certain exhibits and the transcript of the "evidence" taken at the trial are referred to and made a part of the bill of exceptions, but the charge is not referred to. So under the rule in force and adhered to when this case was tried below, when the bill of exceptions was settled, and when the case was heard in this Court, we have no legitimate means of knowing whether or not the defendant has anything to complain of in respect to the charge as given or in respect to any failure to charge in compliance with the requests or otherwise.

Portions of the transcript not referred to are not properly before us, as indeed those portions of a transcript which are referred to, if the reference is for purposes named, are not to be considered for other purposes. *Roach* v. *Caldbeck,* 64 Vt. 593, 24 Atl. 989.

The defendant moved, on numerous grounds, for a judgment in its favor notwithstanding the verdict. The motion was overruled and the defendant excepted. Such a motion in favor of the defendant could not be entertained by the Court. *Davis* v. *Streeter,* 75 Vt. 214, 54 Atl. 185, and cases cited on page 219.

In a supplementary brief the defendant waives this exception. Such questions as were raised, briefed and relied on have been considered by the Court, though some minor matters have been thought too unimportant for specific mention.

*Judgment affirmed.*