R. WARD DENT, ADMR. *v.* BELLOWS FALLS AND SAXTONS RIVER STREET RAILWAY COMPANY.

May Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed February 9, 1922.

*Bill of Exceptions—Reference to Transcript—Uncertainty Solved Against Excepting Party—"Last Clear Chance" Doctrine—Care Required As to Pedestrians Using Railroad Bridge—Evidence—Photographs—Change in Conditions— Pleading—Allegations of Legal Duty—Court Does Not Seek for Error.*

1. Where there is a generally controlling reference in a bill of exceptions to the transcript not intended as a reference for exceptions not noted in the bill, an exception appearing in the transcript and not in the bill is not for consideration.

2. Uncertainty in a bill of exceptions must be solved against the excepting party.

3. Although an exception to the overruling of defendant's motion for a directed verdict was not reviewable because not appearing in the bill of exceptions, the question of the contributory negligence of plaintiff's intestate on which it was based could be considered under an exception to the overruling of defendant's motion to set aside the verdict on the ground of such contributory negligence, which was on the record.

4. The "last clear chance" doctrine presupposes a perilous situation, created or existing through the negligence of both plaintiff and defendant, but assumes that there was a time after such negligence had taken place when the defendant could, and the plaintiff could not, by the use of means available, avert the accident, in which case the negligence of the plaintiff becomes remote, and that of the defendant in not averting the accident, after the peril is or should have been discovered, becomes the sole proximate cause of the injury.

5. When a railroad knows or ought to know that its bridge is used by pedestrians, the duty rests upon it to keep a lookout for them, and to operate its cars there with a reasonable degree of care commensurate with the known danger, even though they are trespassers.

6. Plaintiff's intestate, while crossing defendant's railroad bridge in the nighttime, was struck and killed by defendant's rapidly moving street car. The bridge was used by pedestrians, which fact the defendant knew or ought to have known. The car had no headlight, although it was equipped so one could have been installed. If there had been a headlight, the intestate could have been seen in time to have stopped the car before it reached him. *Held*, that the questions whether plaintiff's negligence had ceased to be operative and had become a mere circumstance of the accident, and whether defendant was negligent in not maintaining a proper headlight, and by reason of its motorman not having the car under proper control, and, if so, whether such negligence intervened after that of the

intestate had ceased to operate, and so became the sole proxi-mate cause of the accident, were for the jury.

7. The verification of photographs, plans, etc., rendering them ad-missible in evidence, is a preliminary question of fact for the trial court, and, if there is evidence tending to show that they are sufficiently accurate to be helpful to the jury, the ruling admitting them will not be disturbed.

8. The fact of some change of conditions in the locality of the acci-dent between the time of the accident and the time of taking photographs did not make the latter inadmissible in evidence, as such change was open to explanation.

9. Evidence relating to the use made of the bridge by pedestrians which tended to show that the defendant had, or ought to have had, knowledge of such use was admissible.

10. In an action for negligence it is not necessary that the declara-tion should allege the legal duty otherwise than by alleging the facts from which the duty must be inferred.

11. Where the defendant took only one exception to the charge of the court, and that is not briefed, it will be assumed that the theory on which the case was submitted to the jury was satis-factory to the defendant.

12. As the Court does not search for grounds on which to reverse a judgment, points are not sufficiently presented to require at-tention unless counsel undertake in the brief to aid in dis-covering the claimed error.

ACTION OF TORT for negligence. Plea, the general issue. Trial by jury at the September Term, 1920, Windham County, *Moulton*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*George A. Weston* and *E. W. Gibson* for the defendant.

*W. A. Graham* and *Harvey, Maurice & Fitts* for the plain-tiff.

TAYLOR, J. Plaintiff's intestate, Fred M. Fairbanks, late of Springfield, Vermont, was killed in the nighttime of August 1, 1918, by being run over by an electric car on a bridge situated on the defendant's road between Bellows Falls and Saxtons River. This action is brought to recover damages for the benefit

of the next of kin. The trial was by jury, with verdict and judgment for the plaintiff. The defendant saved various exceptions, on which the case is brought here for review.

At the close of the evidence the defendant moved for a directed verdict on the grounds: (1) That the undisputed and unconflicting evidence shows contributory negligence on the part of the intestate; and (2) that there is no evidence tending to show negligence on the part of the defendant. The motion being overruled, an exception was noted for the defendant. There was also a motion to set aside the verdict, one ground of which was that "from all the evidence it appears that the decedent was guilty of contributory negligence." The defendant briefs the question of contributory negligence generally without special reference to either motion. The plaintiff contends that the exception taken to overruling the motion for a directed verdict is not presented by the bill of exceptions, and that the exception to overruling the motion to set the verdict aside is not briefed, and so is waived. Both motions raised the same question, so far as they related to negligence on the part of the intestate. It cannot be said that this exception or that is waived by failure to brief, as the discussion applies as well to the one as to the other. However, in view of the possible effect upon the final disposition of the case here, it will be necessary to decide whether the question of error in denying the motion for a directed verdict is saved to the defendant.

[1-3]   The case was passed to this Court on a skeleton bill of exceptions, which specifies generally certain exceptions to the admission and exclusion of evidence, and to the charge of the court and its refusal to charge, "as by the transcript fully appears." The transcript is not in terms made the bill of exceptions; but the transcript of the testimony and charge of the court is referred to and made part of the bill, and it is ordered that it be controlling. No mention of the motion for a directed verdict is made in the bill of exceptions, and the question is whether the reference to the transcript is so restricted that it cannot be treated as made a part of the bill beyond what is therein specified. While under the present practice exceptions may be brought onto the record by proper reference to the transcript, when reference thereto is made for a limited purpose, only the exceptions set forth in the bill are for consideration. *Johnson & Co.* v. *C. V. Ry. Co.,* 84 Vt. 486, 500, 79 Atl. 1095; *Roach*

v. *Caldbeck,* 64 Vt. 593, 24 Atl. 989; *Fraser* v. *Nerney,* 89 Vt. 257, 261, 95 Atl. 501; *Lynch's Admr.* v. *C. V. Ry. Co.,* 89 Vt. 363, 380, 95 Atl. 683. Where there is a general controlling reference to the transcript not intended as a reference for exceptions not noted in the bill, an exception appearing in the transcript and not in the bill is not for consideration. *Bianchi Granite Co.* v. *Terre Haute Mon. Co.,* 91 Vt. 177, 99 Atl. 875. See also *The Cutler Co.* v. *Barber,* 93 Vt. 468, 472, 108 Atl. 400, where other cases are cited. As uncertainty in a bill of exceptions must be solved against the excepting party (*State* v. *Marino,* 91 Vt. 237, 99 Atl. 882; *Reynolds* v. *Bean,* 91 Vt. 247, 99 Atl. 1013), it should be held that the exception to the overruling of defendant's motion for a directed verdict is not on the record. But it does not follow that the question of contributory negligence is not for consideration. The exception taken when the motion to set aside the verdict was overruled, which is on the record before us, saves the question. *German* v. *Bennington & Rutland R. Co.,* 71 Vt. 70, 42 Atl. 972.

The evidence, in the view most favorable to the plaintiff so far as it was conflicting, tended to show the following facts: Plaintiff's intestate was forty-one years of age, in good health, and his sight and hearing were normal. The bridge where the accident occurred was on the defendant's private right of way, a short distance westerly toward Saxtons River from Barber Park. This park is an amusement resort, which the defendant had operated for several years, and to which the public was invited. It was situated on the line of defendant's railroad, and was also accessible by a public highway. On the night of the accident a dance was being held at the park. The intestate had carried a party from Springfield to the park in his automobile, going by the highway, and had returned to Bellows Falls for another party destined for the dance. Instead of driving by the highway to the park on the return trip from Bellows Falls, he parked his automobile in the yard of a house some distance westerly of the bridge, and with those who accompanied him set out for the park on foot, leaving the highway and following the railroad track toward the bridge. It was then about half past nine, and the night was dark and cloudy, so much so that it was difficult walking the track, especially after the bridge was reached. The bridge was 165 feet long, constructed of iron, with the usual timber and cross-ties of such a railroad bridge. For

some years previously boards or planking had been maintained between the rails across the bridge, put there as defendant's evidence tended to show for the convenience of its employees in crossing.   These boards were originally nailed to the ties, but at the time of the accident they had become disarranged and broken on the easterly half of the bridge.   The party proceeded along the track in couples a short distance apart.   The intestate and a Mrs. Cook, whom he was assisting, were the last to go upon the bridge.   The latter had on high-heeled shoes, which increased her difficulty in crossing.   Just as the rest of the party reached the east end of the bridge, and when Mrs. Cook and the intestate were about three-fourths of the way across, the car in question was discovered by those at the end of the bridge as it came in sight around a curve about 835 feet away.   They immediately made an outcry, intended to warn those on the bridge and to attract the attention of the motorman.   The intestate and Mrs. Cook redoubled their efforts to get off the bridge, but the car came on at a rapid rate of speed, which was increased as it approached, and struck them while still on the bridge at a point about eight feet from the easterly end.   Mrs. Cook was thrown clear of the track, but the intestate went under the car and was instantly killed.

The car in question was of the ordinary open type, with running boards on either side.   It was 45 feet long over all, and was lighted by two rows of 16 C. P. electric lights on the inside of the roof.   It had no headlight, though it was equipped so that such a light could have been installed.   On the run in question it was scheduled to leave Saxtons River, two miles westerly of Barber Park, at 9.30, arriving at the park at 9.40, and was running on scheduled time.   As lighted, the motorman could see ahead in the dark only a short distance—some 10 or 15 feet.   The motorman was watching the track ahead as the car crossed the bridge, but did not discover the persons on the track until about three-fourths the way across.   On discovering them he did everything possible to stop the car.   He applied the brakes and reversed the power, which brought the car to a stand about 74 feet from the point where the intestate was struck.

The defendant insists that the intestate was a trespasser, and bases its arguments on the question of its duty to him upon that assumption.   The plaintiff does not seriously contend that such was not the fact, but claims that certain evidence respecting

the use of the track and bridge at that point takes the case out of the rule relied upon by the defendant respecting the duty of a railroad company to trespassers on its track. The evidence referred to tended to show that visitors frequently crossed the bridge in going to or from the park, and that the officials and employees of the company knew, or ought to have known, of this practice. The view we take of this evidence, which we shall have occasion to refer to more in detail later, renders it unnecessary to decide whether the intestate had any more favorable standing than that of a trespasser, and we assume, without deciding, that his position was that of a trespasser. The defendant claims that the intestate was, in the circumstances, guilty of contributory negligence as a matter of law in being upon the bridge, while the plaintiff contends that the question of contributory negligence was for the jury. However, as we shall see the ultimate and controlling question is such that it may be assumed that the intestate was negligent in undertaking to cross the bridge. With this assumption the case is narrowed down to the question whether on the evidence the intestate's negligence must be deemed to have been the proximate cause of his death, or, in other words, whether the doctrine of the "last clear chance" applies.

[4] The rule applicable in such a case has so recently been considered and announced by this Court that any extended discussion of the general proposition is unnecessary. The doctrine presupposes a perilous situation, created or existing through the negligence of both plaintiff and defendant, but assumes that there was a time after such negligence has taken place when the defendant could and the plaintiff could not, by use of the means available, avert the accident. In such a case, the negligence of the party creating the situation is remote, and that of the defendant in not averting the accident, after the peril is or should have been discovered, becomes the sole proximate cause of the injury. *LaMountain's Admx.* v. *Rutland R. Co.*, 93 Vt. 21, 106 Atl. 517; *Miller* v. *Central Vermont Ry. Co.*, 95 Vt. 69, 113 Atl. 524. While actual discovery of the peril is a prerequisite to the application of the doctrine as applied in some jurisdictions, this Court has held, as shown in the cases cited, that a party is called upon to take action for the safety of one who has negligently placed himself in a position of danger when the latter's peril is discovered and comprehended, or with the exercise of reasonable

care would have been discovered and comprehended. The extension of the doctrine to perils not actually discovered is fully justified when the situation is such that the defendant owes the duty of looking out for danger, as in the case of persons crossing a railroad at a highway crossing at grade. Our cases in which the rule has been formulated are all of this character. It should not be understood as applying in the absence of a duty to maintain a lookout, as in case of persons on a railroad track where there is no reason to anticipate their presence. This is the necessary inference from the very statement of the rule.

[5] The defendant is charged with negligence in operating the car at an excessive rate of speed and without a suitable headlight. It is necessary to determine at the outset what, if any, duty the defendant owed the intestate in these respects. The defendant admits that it would be liable for failure to use ordinary care in avoiding injury to the intestate after discovering him in an exposed position, but claims that it was under no further obligation, he being a trespasser. The argument overlooks the fact that defendant's duty at the place in question is affected by the evidence relating to the use made of the bridge such as the intestate and his associates were making. There was evidence tending to show that for several years during the summer when the park was in operation people were accustomed to cross the bridge almost daily in going to or from the park. People coming from the direction of Saxtons River frequently left their teams or automobiles at some point west of the bridge, and walked the track in preference to following the highway. This travel was sufficient to make a well-defined path from the highway across intervening land to the railroad. Defendant's superintendent was present on one occasion at least when people were crossing the bridge. The intestate himself had made a similar use of the bridge two or three times several years before. One witness, formerly employed by the defendant as motorman, testified that on two occasions he had encountered such travelers on the bridge and been obliged to stop to let them get off. On the evidence it would be a question for the jury whether the officials of the company knew or ought to have known of the use being made of the track and bridge by travelers, and whether they should have anticipated that such use would continue. With these facts present, it would be the duty of the defendant to look out for trespassers even at that place, and to operate its

cars there with a reasonable degree of care commensurate with the known danger. Whether the defendant discharged this duty would, on the evidence in this case, be a question of fact. *Lindsay, Admr.* v. *Canadian Pacific R. Co.*, 68 Vt. 556, 35 Atl. 513, and cases there collected.

[6] There was no evidence that the motorman himself was at fault in not seeing the intestate sooner. The negligence, if such it was, in failing to discover him in season to prevent the accident was due to want of sufficient light on the car. But the duty to keep a lookout for travelers on the bridge would not be discharged by vigilant watch on the part of the motorman in the absence of means to make the lookout effectual. There was evidence that with a suitable headlight the intestate would have been visible to the motorman from a point at least 100 feet west of the bridge, a space amply sufficient to stop the car before it reached him. It follows that the question of defendant's negligence in this regard was for the jury, and in dealing with the "last clear chance" doctrine must be assumed. We have then a situation created by the negligence of both parties, and it remains to consider: (1) Whether the plaintiff's negligence had ceased to be operative and become a mere condition or circumstance of the accident; and (2) whether there was, in contemplation of law, subsequent negligence on the part of the defendant.

There would seem to be little doubt that the question of the first element of the doctrine of "last clear chance" was for the jury. The construction of the bridge was such that there was at best but slight opportunity in the darkness for the intestate to escape, after discovering his peril, except as he attempted to do. The ties rested on timbers running lengthwise of the bridge, and these in turn rested on steel floor beams several feet apart and not wide enough for very secure footing, even if they had been discoverable in the darkness. The ties outside the track did not afford a place of safety, as they were practically covered by the overhang of the car. Besides, the intestate was confronted with a sudden emergency, involving not only his own safety but that of his companion as well. On this evidence the jury might find that a time came when the intestate was powerless to save himself by the exercise of due care, while there still remained an opportunity for the defendant, in the exercise of such care, to avert the accident.

We think the question whether there was negligence charge-able to the defendant, intervening after that of the intestate had ceased to operate, was also for the jury. The test on this branch of the case is whether there was evidence tending to show that the claimed negligence of the defendant was an active element after the negligence of the intestate had become a condition or circumstance; in other words, whether the defendant's wrongful conduct contributing to the accident was in operation at the moment it occurred or became inevitable. While the law under the doctrine of the "last clear chance" contemplates only the subsequent negligence of the defendant, the negligence, if such it was, in failing to provide a headlight was continuous to a time when the accident became inevitable, which answers the second requirement of the doctrine. *Lloyd* v. *Albermarle, etc., R. Co.,* 118 N. C. 1010, 24 S. E. 805, 54 A. S. R. 764; *Dyerson* v. *Union Pacific R. Co.,* 74 Kansas 528, 87 Pac. 680, 7 L. R. A. (N. S.) 132, 11 Ann. Cas. 207; note 55 L. R. A. 418. Moreover, it was a question for the jury whether ordinary care did not require the motorman to approach and cross the bridge with the car under such control that it could be stopped within the space that he could see ahead, assuming that he was bound to anticipate the presence of persons there. The law would require him to exercise the degree of care commensurate with known dangers, which would include those reasonably to be anticipated. The want of a headlight necessarily increased the difficulty of keeping an effectual lookout, and was a circumstance affecting the rate of speed at which the car might with prudence be driven across the bridge. Negligence in this regard, if found, would clearly intervene after the negligence of the intestate.

It follows that the evidence made a case for the jury under the doctrine of the "last clear chance," and that the intestate could not be held to be guilty of contributory negligence as a matter of law.

[7, 8] Exceptions were taken to the admission of certain photographs of the bridge and of the railroad track in the vicinity. The objection was that conditions had not been shown to be the same as they were at the time of the accident, and more particularly that the different photographs did not show the same arrangement of the boards through the bridge. The photographs were all taken the forenoon following the accident, and there was testimony that the boards remained in the same rela-

tive position.  The only respect in which it is claimed there was any possible change of conditions was in the arrangement of the boards, and as to this no question was made in the evidence. The verification of photographs, plans, etc., rendering them admissible in evidence, presents a preliminary question of fact for the determination of the trial court.  If there is evidence tending to show that they are sufficiently accurate to be helpful to the jury, the ruling admitting them will not be disturbed on review. *Hassam* v. *Safford Lumber Co.,* 82 Vt. 444, 449, 74 Atl. 197; *Leland* v. *Leonard,* 95 Vt. 36, 112 Atl. 198.  To that extent it may be said that their admission is largely within the discretion of the trial court.  See *Goulette's Admr.* v. *Grand Trunk Ry. Co.,* 93 Vt. 266, 271, 107 Atl. 118.  That the photographs were admitted upon such evidence cannot be questioned.  The defendant was not prejudiced, for any change of conditions, if relied upon, was open to explanation.  *Aldrich* v. *Boston and Maine R. R.,* 91 Vt. 379, 384, 100 Atl. 765; *State* v. *Longe,* 96 Vt., 116 Atl. 81.

[9]  Numerous exceptions were taken to the admission of evidence relating to the use made of the bridge by pedestrians, against the objection that it was irrelevant and immaterial.  It is enough to say, in view of what already appears, that this class of evidence was clearly material.  The evidence was such that the jury might find, if not that the officials of the defendant had actual knowledge of the use, that they should be taken to have known it, which, in legal effect, would be equivalent to actual knowledge.  The defendant's criticism of the answer of one witness, ''I presume I have seen them every day,'' hardly merits notice.  The answer was given in response to a proper question, and was immediately followed by the statement that such was his recollection.  Besides, the answer was not objected to and the point argued was not saved by the exception, which was to that line of testimony.

[10]  Evidence having already been received without objection that there was no headlight on the car in question at the time of the accident, the plaintiff offered to show that there was a place on the car for a headlight.  It was objected to on the ground that under the pleadings it was irrelevant and immaterial.  Thereupon the plaintiff had leave to amend the complaint, which was done.  The evidence was then received against the further objection that there was no allegation in the amended

complaint of any duty on the part of the defendant to equip its cars with headlights.   Later another witness was permitted to testify that there was no headlight on the car, against "the same original objection."   In response to the court's inquiry, the ground of objection specified was that the evidence was immaterial and irrelevant.   It is argued that the exceptions taken raise the same question, *viz.:* That the evidence was inadmissible for want of an allegation that it was the duty of the defendant to have a headlight on its car.

Giving these exceptions the scope claimed for them, error does not appear.   It would not be necessary to allege that it was the defendant's duty to maintain a headlight on the car.   It is sufficient that the facts alleged show such a duty.   *Winifred Bros.* v. *Rutland R. Co.,* 71 Vt. 48, 42 Atl. 980.   It is elementary that the facts from which the duty arises must be alleged so the court may see that the duty exists.   *Kennedy* v. *Morgan,* 57 Vt. 46.   But the duty inferable therefrom is a conclusion of law and need not be alleged.

[11, 12]   The defendant made several requests to charge, and excepted to the failure of the court to comply with certain of them.   Only one exception was taken to the charge as given, and that is not briefed, so it must be taken that the theory on which the case was submitted was satisfactory to the defendant. The exceptions are very imperfectly briefed, if not too inadequately treated to require attention.   But little more is undertaken than to recite the several requests with the assertion that the defendant was entitled to have them complied with.   As the Court does not search for grounds on which to reverse a judgment, points are not sufficiently presented to require attention, unless counsel undertake in the brief to aid in discovering the claimed error.   *Hopkins* v. *Sargent's Estate,* 88 Vt. 217, 222, 92 Atl. 14.   However, we have examined the requests and fail to discover reversible error.   For the most part the questions are sufficiently covered by what has been said in discussing the question of contributory negligence.

*Judgment affirmed.*