# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF VERMONT

---

ESTELLE SHERWIN *v.* RUTLAND RAILROAD CO.

October Term, 1901.

Present: ROWELL, TYLER, START, WATSON and STAFFORD, JJ.

Opinion filed November 29, 1901.

*Railroad crossing—Contributory negligence—Duty of traveler—Question for jury—Evidence—Instructions.*

If, in an action for personal injuries, based upon the negligence of the defendant, the plaintiff's evidence is such that intelligent and fair-minded men might reasonably differ as to whether the plaintiff was, at the time of the accident, in the exercise of the care of a prudent man, a motion for a verdict is properly denied.

It cannot be said as matter of law, that a traveler approaching a railroad crossing in an express wagon drawn by a horse under perfect control, can when within twelve feet thereof, by the exercise of due care, discover a rapidly approaching car, the view of which is obstructed until it is within thirty feet of the crossing, in time to avoid a collision.

When a person approaches a railroad crossing where the view of the track is so obstructed that the eye cannot effectually discover an approaching train, it becomes his special duty to make such vigilant use of his sense of hearing as a prudent man would make under like circumstances.

The plaintiff having been, at the time of the accident, in a position to make such vigilant use of her sense of hearing, and having testified that she did listen for an approaching train, it was not the province of the court, in the absence of controlling circumstances, to say that she did not, in this respect, exercise the caution which the law requires.

*Carter* v. *Central Vermont Railroad Co.*, 72 Vt. 190, distinguished.

It is error to submit to the jury an issue which there is no evidence to sustain.

The case does not show such circumstances as warranted an instruction that it was the duty of the plaintiff to stop before attempting to go over the crossing.

The fact that the plaintiff was listening for trains when she attempted to go over the crossing, and the circumstances under which she did so, have some tendency to show that she was relying upon the sounds which usually signal an approaching train,—like the blowing of whistle or the ringing of bell.

The refusal to comply with a request to instruct which requires the court to single out and make prominent particular portions of evidence, when there are several important issues for the consideration of the jury, will not be held error when the evidence on that subject is not furnished.

A request to instruct which requires the court to single out and give prominence to particular facts which might be varied by other facts proved, is properly denied, since a compliance with it would be likely to mislead the jury.

CASE for personal injuries sustained by the plaintiff in a collision with defendant's cars at a grade crossing in Chester. Plea, the general issue. Trial by jury at the March Term, 1901, Rutland County, *Munson, J.*, presiding. Verdict and judgment thereon for the plaintiff. The defendant excepted.

*F. H. Button, Barber & Darling* and *G. A. Davis* for the defendant.

The undisputed facts show conclusively that the plaintiff was guilty of contributory negligence. The evidence was susceptible of but one just opinion; only one inference could be drawn. This case cannot be distinguished from *Carter* v. *Central Vermont Railroad Co.*, 72 Vt. 190.

If by a vigilant use of her eyes or ears the plaintiff might have discovered and avoided the danger, and she omitted such vigilance, she was guilty of contributory negligence. A collision at a railroad crossing is *prima facie* evidence of negligence on the part of the traveler. *Hooper* v. *B. & M. R. R. Co.,* 81 Me. 260; Elliott on Railroads, s. 1163.

A traveler should not venture upon a railroad crossing until it is made reasonably plain that he can go over without risk of a collision. *Carter* v. *Central Vermont Railroad Co., supra; Giberson* v. *B. & A. R. R. Co.,* 89 Me. 337.

Plaintiff's testimony that she looked and listened, is not conclusive. *Carson* v. *R. R. Co.,* 147 Penn. 219; *Smith v. Maine Central R. R. Co.,* 87 Me. 219; *Allen* v. *Maine Central R. R. Co.,* 82 Me. 111.

There is no testimony which tends to show that after the trainman saw the plaintiff, he did not perform his legal duty toward her. The submission of this question to the jury was error. *Worthington* v. *C. V. R. R. Co.,* 64 Vt. 107.

If the plaintiff feigned or exaggerated her symptoms of pain and suffering, with the deliberate purpose of obtaining damages to which she was not entitled, the jury might have rejected all her evidence on that subject, and the court should have so instructed. *Gordon* v. *Tabor,* 5 Vt. 103; *Flinn* v. *St. John,* 51 Vt. 334; *State* v. *Harrison,* 66 Vt. 523; 2 Ency. Pl. & Pr. 185.

*Butler & Moloney* and *G. E. Lawrence* for the plaintiff.

There was a clear conflict between the testimony of the plaintiff and that of the defendant, as to how far down the track an approaching train could be seen by a person going on to the crossing. This made it necessary to submit the question of contributory negligence to the jury.

One of the defendant's servants was on the car and saw the plaintiff's danger; the case is silent as to what means, if any, he employed to stop the cars. He saw, or ought to have seen the plaintiff in time to have avoided the accident by giving seasonable warning or stopping the cars. He did neither, and no explanation of his failure is given. The question was properly submitted to the jury.

The sixth request is an attempt to single out some one or two matters wherein the defendant was at fault, and get the court to say that, standing alone, they did not entitle the plaintiff to recover. This is not allowable. *Ashley* v. *Hendee,* 56 Vt. 299.

START, J. The action is case for personal injuries resulting from an accident upon the defendant's side track. At the close of the evidence the defendant moved for a verdict, for that from the undisputed evidence it appeared that the plaintiff's negligence contributed to the happening of the accident, and that there was no evidence that tended to show that the defendant discovered the plaintiff's peril in time to avoid the accident, or could have avoided the same. This motion was overruled, and the defendant excepted.

If the evidence fairly tended to show that at the time of the accident the plaintiff was in the exercise of the care and prudence of a prudent man under like circumstances, the motion was properly denied; and, if the evidence upon this question was such that intelligent and fair-minded men might fairly and reasonably differ, it must be held that it had such tendency.

At the place where the accident happened, a side track of the defendant extends in a southeasterly and northwesterly direction, and is crossed at grade by a public highway at an angle considerably less than a right angle. On the southerly side of the highway, and westerly from the side track, and about

3½ feet therefrom, the store and barn of one Leland extend northerly and southerly along the side track for a distance of about 95 feet, and obstruct the view, toward the south, of a traveler approaching the crossing. The evidence in regard to the extent the view was obstructed by the buildings was conflicting. The testimony of the plaintiff tended to show that from the crossing an engine could probably be seen 20 or 30 feet, and that a person would have to be within 10 or 12 feet of the track in order to look down the track and see a train. The defendant's testimony tended to show that a person standing 10 feet from the crossing had an unobstructed view down the track for a distance of 229 feet; at 15, 150; at 20, 110; at 30, 74; and at 40, 62 feet. The plaintiff had been trading in the Leland store. She left her horse on the westerly side of the Leland barn, at a point where the defendant's main line could be seen for a distance of some 60 feet from the point where it intersects with the side track. After completing her business in the store, she went to her team, and before and after unhitching her horse looked and listened for an approaching train, but did not see or hear anything that indicated that a train was approaching. She then got into her wagon, which was a light express wagon, and walked her horse toward the crossing. As she approached the crossing, she looked and listened for a train. She did not hear one, and none was in sight. As the horse was about to step upon the track, some one hallooed, "Whoa!" The horse stopped, and within a second was struck by a freight car that had been shunted from the main line. The car came very fast, and the view of it was obstructed by the Leland store and barn. The horse was kind, gentle, not afraid of the cars, and easy to rein and control. The plaintiff was 48 years old; her hearing and eyesight were good; she was familiar with the location, and had driven over the crossing many times. There was no evidence tending to

show that the defendant's engine or cars were in sight, from the point where the plaintiff looked and listened before and after unhitching her horse, at any time after the plaintiff left the store, and before she started for the crossing, except the fact that the car came from behind Leland's store so soon thereafter; but we cannot say from this fact that the car or engine was in sight from the hitching post at the time she was there, and, if she had looked, she would have seen them. At this point the main line, from the point of its intersection with the side track, can be seen for a distance of about 60 feet; and while the plaintiff was turning her horse and driving to the crossing the car may have come over the 60 feet, and passed over the side track to the crossing.

From this evidence the jury might fairly find that the plaintiff looked for cars before starting from the hitching post, and that none were then in sight. The plaintiff claimed that the view of the track was so far obstructed that she could not see the car in season to avoid the accident. As we have seen, her evidence tended to show that at the crossing the view of an approaching car is obstructed until it is within 30 feet of the crossing, and that a person has to be within 12 feet of the track in order to look past the corner of Leland's store and down the track; while the defendant's evidence tended to show that a car could be seen from a point more distant from the track, and farther down. Upon this evidence the issue of distance was for the jury, unless there was some other controlling fact that precluded a recovery. To hold otherwise, it must be said as a matter of law that a traveler approaching a railroad crossing in an express wagon drawn by a horse, when within 12 feet of the crossing, by the exercise of due care, can see, or ought to see, a car that is detached from the engine, and rapidly approaching, the view of which is obstructed until it reaches a point within 30 feet of the crossing, in season to

avoid a collision. This we cannot do. The question calls for a consideration of the speed of the car, the time in which the traveler has to consider and act, and what prudent men do in like circumstances; and is one upon which intelligent and fair-minded men might reasonably differ. Therefore the case, in so far as it depended upon the question of whether the plaintiff, by the exercise of due care, could or ought to have seen the car in season to have avoided the accident, was fairly for the jury.

The view of the track being obstructed, so that the plaintiff could not effectually look for approaching trains, it became her special duty to make a vigilant use of her sense of hearing, such as a careful and prudent man would make in the same circumstances. In determining whether her evidence tended to show that she was in the exercise of due care in this respect, we must consider the fact that just before she got into the wagon she looked and listened for an approaching train from a point where she could see the main track for 60 feet from the point where it intersects with the side track, and neither saw nor heard a train; that the crossing was very near the point from which she had just looked and listened; and that she was in a light express wagon, drawn by a horse that was walking, kind, gentle, perfectly manageable, and not afraid of the cars, listening for an approaching train. It does not appear that there was any noise from the wagon, or from any other source, that would prevent her from effectually listening; and, in view of the fact that the horse was walking, and the vehicle a light express wagon, such noise cannot be inferred. Under these circumstances, we cannot say, as a matter of law, that the plaintiff was not in a position to make a vigilant use of her sense of hearing to discover and avoid danger. Upon this question intelligent and fair-minded men might reasonably differ. The plaintiff had looked and listened

for an approaching train just before her horse started for the crossing, and while her wagon was not in motion. In view of this fact, and all of the circumstances and conditions disclosed by the plaintiff's evidence, it was for the jury to say whether a careful and prudent man in the same circumstances would have considered it necessary to again stop, or to do anything that the plaintiff did not do, in order to effectually listen. The plaintiff being in a position to make a vigilant use of her sense of hearing, and having testified that she was listening for an approaching train, it was not the province of the court to say that she did not listen, and by such omission contributed to the injury complained of. The evidence did not disclose any controlling circumstances from which the court could say that she did not listen, and was therefore negligent. The fact that she did not hear the car may be a strong circumstance tending to show that she did not listen, but this is not controlling. This may have been due to the condition of the atmosphere, or to the fact that the car, being detached from the engine, and going up grade, came along comparatively noiselessly. The conditions were very different from what they would have been if the car had been preceded by an engine, and accompanied with the noise of escaping steam and the working of machinery, which is usually heard when an engine is going up grade with cars attached. These circumstances and conditions were for the consideration of the jury, and from them it was for the jury to say whether the plaintiff made a vigilant use of her sense of hearing. We therefore hold that the case was fairly for the jury on the question of contributory negligence.

The case is unlike that of *Carter* v. *Railroad Co.*, 72 Vt. 190, 49 Atl. 797, relied upon by the defendant. In that case the plaintiff's team was making a noise that would naturally prevent him from effectually listening. The case is more like

the cases of *Manley* v. *Canal Co.,* 69 Vt. 101, 37 Atl. 279, and *Boyden* v. *Railroad Co.,* 72 Vt. 89, 47 Atl. 409. In these cases the view of the track was obstructed, and it was held that the question of contributory negligence was for the jury.

The court instructed the jury that from the time it became apparent that the plaintiff was going upon thte track it was the trainman's duty to do all he could to avoid injuring her; that it was for the jury to say whether there was then time for him to do more than he did do; and that, if there was a failure in this respect, the plaintiff could recover on this ground. The defendant excepted to this on the ground that there was no evidence tending to show negligence in this respect. This instruction was error. There was no evidence tending to show that the trainman, after he discovered that the plaintiff was going upon the track, did not do all that he could to avoid injuring her; and, under the instruction, the jury may have found for the plaintiff without considering the question of contributory negligence. They were at liberty to do so. It appears that some one hallooed "Whoa!" as the horse was stepping upon the track, and that the horse stopped, and was struck within a second thereafter. If we assume that this person was the trainman, and that he was on the car, there is nothing in the evidence which tends to show how long he had been there; nor is there anything which tends to show that he saw or could have seen the peril to which the plaintiff was exposed until the instant he hallooed "Whoa!" nor that he could have stopped the car in season to have avoided the injury.

The defendant presented fourteen requests to charge, none of which were complied with in the language of the requests, and to this omission the defendant excepted. The first and seventh requests are, in effect, motions for a verdict, and, for reasons hereinbefore stated, were properly denied. The

second and third requests call for an instruction that it was the duty of the plaintiff to stop before attempting to go over the crossing.   In *Manley* v. *Canal Co.*, 69 Vt. 101, 37 Atl. 279, it is held that a traveler approaching a railroad crossing is not bound, as a matter of law, to stop, in order to avoid an imputation of negligence.     There was no controlling or conceded fact in the case that called for the instruction asked for; therefore the court rightfully omitted to comply with the requests.   The sixth request asked for an instruction that there was no testimony that the plaintiff drove upon the crossing relying upon the fact that the blowing of whistle or ringing of bell was not heard by her; and, if no signal of that kind was given, its absence would not entitle her to recover.   The omission to comply with this request was not error.   The fact that she was listening for an approaching train, and the circumstances under which she did so, and attempted to go over the crossing, have some tendency to show that she was acting in reliance upon the sounds that usually accompany or signal an approaching train.   The eighth and ninth requests, in effect, called for an instruction that if the plaintiff knowingly and intentionally feigned pain and suffering with the deliberate purpose to obtain damages, the jury should take such fact into consideration in determining what weight should be given to her testimony; and that they were at liberty to reject her evidence upon the subject of damages.   We have not been furnished with the evidence upon the subject of these requests, and cannot say that the omission to comply with them was error.   A refusal to single out and give prominence to particular portions of the evidence, where there are several important issues of fact for the consideration of the jury, is not usually considered error.   The evidence might be such that it would be error to do so.   11 Ency. Pl. & Pr. 185.   The tenth, eleventh, and twelfth requests call for instruction that the

fact that the train was running at a high rate of speed, that the whistle was not blown or the bell rung, and that the defendant was shunting the cars over the side track, did not entitle the plaintiff to recover; and were properly denied. A compliance with these requests would require a singling out and making prominent particular facts that might be varied by other facts proved. The right of recovery was not dependent upon these facts alone. They would be affected by a finding of negligence on the part of the defendant in the running of its train, shunting of its cars, its omission to blow the whistle or ring the bell, and due care on the part of the plaintiff; and an instruction that they would not entitle the plaintiff to recover, without telling the jury the effect that other facts, if found, would have upon them, would very likely mislead the jury, and ought not to be given. The fourteenth request related to the duty of the plaintiff at the point of the accident, and the effect of negligence on the part of the defendant's trainman at that point. The court correctly stated to the jury the law upon the subject of the plaintiff's duty and the duty of the trainman, after discovering the peril to which the plaintiff was exposed, but erred in holding that there was evidence tending to show a shortage of duty in this respect on the part of the trainman. As the judgment must be reversed, and a new trial granted for this error, it is unnecessary to further consider this request. The defendant has not suggested any error in the refusal of the court to comply with the other requests, and we conclude that the exceptions taken to the omission to comply with them are not relied upon.

*Judgment reversed, and cause remanded.*

TAFT, C. J., concurs in the result.