LEO LABELLE v. CENTRAL VERMONT RAILWAY COMPANY.

November Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 13, 1913.

*Railroads—Accidents at Crossings—Contributory Negligence—
Last Clear Chance—Directed Verdict—Sufficiency of Evidence.*

In an action against a railroad company for injuries at a grade crossing, evidence *held* to show that plaintiff was guilty of contributory negligence, as matter of law, in not looking for the train after he reached a point where he had a clear view, even though he testified that he was watching and listening all of the time.

In disposing of an exception to a directed verdict the evidence must be viewed in the light most favorable to the exceptor.

Where a person was injured in consequence of his wagon colliding with a locomotive at a railroad-highway crossing at grade, and the undisputed evidence showed that he could have seen the approaching train and avoided the accident at any time until the train was so close that the trainmen could not have avoided the collision, his negligence was concurrent with the negligence, if any, of the trainmen, and so the doctrine of the last clear chance does not apply.

CASE for negligence. Plea, the general issue. Trial by jury at the December Term, 1911, Windsor County, *Fish*, J., presiding. Verdict directed for the defendant, and judgment thereon. The plaintiff excepted. The opinion states the case.

*Hollis & Murchie* for the plaintiff.

*C. W. Witters, Clarke C. Fitts* and *Hermon E. Eddy* for the defendant.

WATSON, J. This is an action to recover damages for personal injuries received by the plaintiff, a traveler on the public highway, when crossing defendant's track at "Moore's Crossing," so-called, in the town of Hartford, this State.

At the close of the evidence defendant moved for a verdict on several grounds specified, among which was, that the plaintiff had not shown himself free from contributory negligence at the time of his injury. The plaintiff claimed the right to go to the jury on the ground of "last clear chance." The court denied the plaintiff's claim in this regard, and directed a verdict against him on the ground of contributory negligence. To each of which rulings an exception was saved.

The defendant's railroad runs northerly and southerly. Going northerly toward the crossing where the accident happened, the public highway nearby parallels the railroad for a long distance before turning westerly over it at this crossing. This portion of the highway is some feet lower than the railroad track, and is on an ascending grade for a hundred fifty feet or more before getting to the crossing. From where the highway begins to turn westerly, it runs somewhat diagonally with the railroad track up to the crossing. Nearing the crossing from the same direction, there stood on the right hand side of the highway a crossing sign post, 8 by 8 inches in size, and 19.9 feet from the easterly rail of the railroad track at the crossing. Standing 11 feet northerly of this post and 19.3 feet from the easterly rail, was a telegraph pole. Southerly of the crossing sign post and 33.2 feet from the easterly rail, stood a telephone pole. These telegraph and telephone poles were about ten inches in diameter. There was also a fence extending from the cattle guard just northerly of the crossing back (easterly) to the fence along the line of the railroad right of way. The westerly end of this fence was 6.6 feet from the easterly rail. The fence was made of posts and boards nailed thereon. The boards were narrow, and the spaces between them were as wide as the boards, if not wider. The fence was four boards high, except that between the second and the third posts from the track, it was but three boards high. Some 300 feet northerly from the crossing is a knoll on the same side of the track, 8.5 feet high above the center of the track at the crossing. From the center of the crossing in the same direction the track is straight for a distance of 2,363 feet, then it curves westerly.

The plaintiff when injured was sixty years old, health good, hearing good, eyesight good. He had before then passed over the crossing where the accident occurred several hundred times, and was entirely familiar with the crossing and its surroundings,

including the railroad both northerly and southerly from that point.   In the afternoon of the day of his injury he was passing over the highway northerly toward the crossing, driving a pair of horses hitched to a common dump cart, such as farmers use. The horses were twelve or thirteen years old and could be managed by him perfectly well.   The top of the dump cart was set back so the forward wheels could cramp in making a turn.   There was an iron seat, like those on mowing machines, just in front of the box, resting on the tongue which connected the forward axle.   This seat was just far enough from the body so one could sit on the seat without being hit when the body was tipped up. The front wheels were about three feet high, and there was no trouble looking over them.

The case stands upon the plaintiff's testimony alone as to what he did when approaching and going upon the crossing. In this respect his testimony was in substance that when back from the crossing some 800 feet or more, being cold, he got off the seat to walk, thereafter walking beside the tongue, between the front wheels and the body, so he could drive his horses; that it was then about half past two o'clock; that thus walking he was six or seven feet behind the horses' tails and fourteen or fifteen feet back of their heads; that he knew it was about time for the express train to come along there, and so listened, thinking that if he heard the whistle blow he would stop and wait until the train went by; that not hearing the whistle, he drove along to a point forty or fifty feet from the easterly rail and then stopped, looked up the track, and listened for the whistle; that neither seeing nor hearing anything there, he started along, still watching and listening; that after he got by the posts and the fence, and when the horses were on the crossing and he "was just getting on" to the track, he "gave another look" and saw the train coming, "and I slapped up my horses with the reins and holler to go and I was hurrying as quick as I could—I didn't want to get killed and my horses did jump ahead, but they struck my cart and the cart struck me;" that after starting along from where he stopped, as before stated, he did not stop again before going on to the track; that when looking from the place where he stopped the knoll bothered him a little, and after that the post was in the way some, and then where he stopped he was lower than the railroad and as he stood there looking up the track the fence was higher than he was and shut

off his view; that after he started up his horses they walked right along as any common walking team would, about two and one-half miles an hour; that as he came up to the crossing and went on to it, he kept his eyes open and looking, but did not hear any whistle blow, nor bell ring, nor anything whatever of the train; that when he saw the train, should say it was three or four rods away, and does not know whether more than that or not; that when he went up to and upon the crossing, he was a foot or so in front of the seat, between the tongue and the front wheel, walking close to the tongue; that nothing was over his ears; that the knoll before mentioned is high enough so one cannot see a locomotive over the top of it if the locomotive be back of the knoll, but after one gets a little further one might see a locomotive on the side; that he did not know whether before the horses got on to the track he could, had he looked up the track, have seen a train coming 2,000 feet away—"could see quite a little piece from there;" and from where he saw the train he could see up the track 2,000 feet and see a train if one was there.

The plaintiff further testified in considerable detail respecting the objects that obstructed his view from the highway northerly as he was approaching the crossing, including the knoll mentioned; but he introduced no evidence touching locations and distances by actual measurements. Giving him, as we must, the benefit of all that his testimony fairly and reasonably tends to show in this respect, and yet a jury would not be warranted in finding for him on the question of contributory negligence, in view of the unshaken evidence introduced by the defendant bearing thereon.

The defendant showed that at a point 23 feet from the easterly rail, measured along the center of the highway over which the plaintiff passed in approaching the crossing, which point is but 12.6 feet from the nearest rail, measured direct, a person can see 2,363 feet northerly up the track to where it curves westerly as stated above. The train was running at the rate of fifty miles an hour, or 73.3 feet a second. Before the time when the plaintiff says he first saw the train, his horses were walking at the rate of two and one-half miles an hour, or 3.66 feet a second. It mathematically follows that when the plaintiff was at the point 23 feet from the easterly rail, the train was 459.5 feet away; and when the plaintiff was 15 feet from

that rail and the heads of the horses were just up to, but not over, it, the train was 300.5 feet away.

Clear it is that within the distance of 23 feet from the easterly rail, measured along the center of the highway as traveled by the plaintiff, and while his horses were yet a safe distance from the track, the train was plainly within his view, and if he did not see it the only reasonable explanation is, that he was not vigilantly looking and listening, as the law required. Failing to do this, going upon the crossing was such contributory negligence on his part as prevents a recovery, unless it became remote within the meaning of the doctrine of the "last clear chance," invoked by his counsel. *Flint's Admr.* v. *Central Vermont Ry. Co.*, 82 Vt. 269, 73 Atl. 500. Furthermore, the view of the track northerly being thus unobstructed within the distance named, the plaintiff's testimony that he was continually looking and listening, but neither saw nor heard the train until it was only three or four rods away and just as he was going on to the track, avails him nothing. If he looked up the track, he must have seen the approaching train and he went upon the crossing regardless of it. If he did not look, the legal effect is the same. Let it be either way, his attempt to cross was a reckless undertaking. In *Carter* v. *Central Vermont R. R. Co.*, 72 Vt. 190, 47 Atl. 797, the plaintiff gave in effect similar testimony, but this Court said that his subsequently detailed account of the occurrence showed that he was not watching vigilantly for the train before his attention was attracted thereto by the action of his horse, and the Court quotes with approval from a Pennsylvania case that, "It is in vain for a man to say that he looked and listened who walks in front of a moving locomotive." In *Blumenthal* v. *Boston & Maine R. R.*, 97 Me. 255, 54 Atl. 747, although the evidence showed the plaintiff's view of the railroad was obstructed to a considerable extent for some distance before reaching a point 25 feet from the crossing, yet when he was 25 feet distant from the place of collision, he had an unobstructed view of the approaching train, which was not more than 150 feet distant on the track from the crossing. The court below rendered judgment of nonsuit, and on exception that question was considered in the court of last resort. It was there urged that an issue of fact was raised which should have been passed upon by the jury, because the plaintiff testified that before attempting to cross the railroad track he both looked and

listened for an approaching train, and did not see or hear the one he collided with until he was on the track and just before the train struck him.   The court said this could not be so when the undisputed circumstances show that the story of a witness upon a material issue cannot by any possibility be true, or when his testimony necessarily relied upon, is inherently impossible. "In this case, as we have seen, the plaintiff, when he was 25 feet distant at least from the place of the collision, and when he had ample opportunity to stop or turn aside, could have seen the approaching train if he had looked, as was his duty.   As we have already said, he either did not look, or did look and saw the approaching train, but attempted to cross, regardless of it.   Under these circumstances, it does not help him that he testified that he did look and did not see the train; nor did this testimony, under the circumstances of the case, raise an issue of fact which should have been submitted to the jury."   In *Myers* v. *Railroad Co.,* 150 Pa. St. 386, 24 Atl. 747, the plaintiff testified that at about fifteen or twenty feet from the track he stopped his team, looked each way along the railroad and listened; and that he neither saw nor heard a train approaching; that he then drove on, and while on the track was struck and injured.   The jury found this statement to be true.   On exceptions the highest court of the state said, "The fact that four or five seconds after he says he looked and listened he was struck by a train that must have been plainly visible and almost on him at the time he alleged that he looked, is so palpably and absolutely irreconcilable with the truth of his statement that he did stop, look both ways, and listen, before driving upon the crossing, that it is trifling with justice to permit a jury to find it is true.   Such a finding is absurd.   It is simply and flatly impossible that one can stop, look, and listen for an approaching train that is in plain view, and close at hand, and be unable to see or hear it, if he possesses the senses of sight and hearing." In *Holden* v. *Pennsylvania R. Co.,* 169 Pa. St. 1, 32 Atl. 103, it was held that the rule applies alike to foot passengers and to carriage passengers; and in either case if the one injured testifies that he stopped and looked both ways and listened, and did not see or hear an approaching train, yet if, in fact, he is struck and injured the moment he or his horse gets upon the track, it is conclusive proof that he could not have used his senses, and he cannot recover.   To the same effect are *Paul* v. *Philadelphia,*

*etc. Ry. Co.,* 231 Pa. St. 338, 80 Atl. 365, Ann. Cas. 1912 B, 1132; *Dolfini* v. *Erie R. Co.,* 178 N. Y. 1, 7 N. E. 68; *Carlson* v. *Chicago, etc. Ry. Co.,* 96 Minn. 504, 105 N. W. 555, 4 L. R. A. (N. S.) 349, 113 Am. St. Rep. 655.

Should the case have been submitted to the jury upon the doctrine of the "last clear chance"? The negligence of the plaintiff proximately contributing to the accident continued as long as it was possible for him to avoid personal injury. He was walking between the front wheels and the body of the dump cart, his horses perfectly manageable. The space between the forward wheels and the body was sufficient for cramping purposes, and there was no evidence tending to show that it was not large enough for the plaintiff to go through and outside the wheels, thereby to leave the team at any time before he went upon the track, if need be for his safety. He could have done this until the train was so near, according to the undisputed evidence, that it was no longer possible for those in charge to prevent a collision. Thus it appears that the plaintiff's negligence, proximate in character, was concurrent with that of the defendant (assuming that the defendant was negligent) as long as it was possible for the latter to avoid the accident. In this respect the case is not distinguishable from that of *Flint's Admr.* v. *Central Vermont Ry. Co.,* cited above, and the doctrine of the "last clear chance" does not apply. *French* v. *Grand Trunk Ry. Co.,* 76 Vt. 441, 58 Atl. 722; *Butler* v. *Rockland etc. St. R. Co.,* 99 Me. 149, 58 Atl. 775, 105 Am. St. Rep. 267; *Green* v. *Los Angeles Terminal R. Co.,* 143 Cal. 41, 76 Pac. 719, 101 Am. St. Rep. 68.

*Judgment affirmed.*