GEORGE HAMMOND *v.* ALEXANDER HARJOHN.

May Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 4, 1921.

*Motion for Directed Verdict—Construction of Evidence by Court —Care Required of Pedestrian When Crossing Street.*

1. In an action for personal injuries, based upon the negligence of the defendant, where the plaintiff testified that he looked before he started to cross a street and did not see defendant's team

approaching, it was not the province of the court, in the absence of controlling circumstances showing that his testimony could not, by any possibility, be true, or was so inherently impossible as not to be credible, to say that he must have seen the team.

2. Where a pedestrian, before starting to cross a street, looked both ways, and, seeing no team, none being in sight, started to cross the street, and when he had gone about a third or half the way was run into by a team, it cannot be said as matter of law that, in making the crossing, constant vigilance was required of him, nor that he was required to look a second time as he proceeded to see if teams were approaching.

ACTION OF TORT for negligence. Plea, the general issue. Trial by jury at the June Term, 1920, Windsor County, *Moulton, J.,* presiding. At the close of plaintiff's evidence a verdict was directed for the defendant. The plaintiff excepted. The opinion states the case.

*Blanchard & Tupper* and *Edward C. Dufficy* for the plaintiff.

Contributory negligence is a bar to plaintiff's recovery only when it is the proximate cause of the injury. *Hurd* v. *Rutland & Burlington Ry.,* 25 Vt. 116; *Thorp* v. *Rutland & Burlington Ry.,* 27 Vt. 140; *Hyde* v. *Jamaica,* 27 Vt. 443; *Ploof* v. *Burlington Traction Co.,* 70 Vt. 509; *Burnham* v. *Rutland Ry. Co.,* 88 Vt. 36; *Aiken* v. *Metcalf,* 92 Vt. 57; *Trow* v. *Vermont Central Ry. Co.,* 24 Vt. 487; *Cavanaugh* v. *Boston & Maine R. R.* (N. H.) 79 Atl. 694; *Tullock* v. *Connecticut Co.* (Conn.) 108 Atl. 556.

*Warner A. Graham* and *Raymond Trainor* for the defendant.

The doctrine of the last clear chance does not apply. *Flint's Admr.* v. *C. V. R. Co.,* 82 Vt. 269; *Labelle* v. *C. V. R. Co.,* 87 Vt. 87; *Aiken* v. *Metcalf,* 92 Vt. 57; *LaMountain's Admr.* v. *Rutland R. Co.,* 93 Vt. 21; *Magoon* v. *Boston & Maine R. Co.,* 67 Vt. 177; *Seviour's Admr.* v. *Rutland R. Co.,* 88 Vt. 107; *Millar* v. *C. V. Ry. Co.,* 95 Vt. 69.

WATSON, C. J.   The plaintiff seeks to recover damages for injuries received by him through the alleged negligence of the defendant in February, 1920, the exact day does not appear. At the close of plaintiff's evidence, defendant moved that a verdict be directed in his favor on the grounds (1) that the evidence shows the plaintiff was guilty of contributory negligence, and (2) that there is no evidence tending to show negligence on the part of the defendant.   The motion was granted on the first ground, to which plaintiff excepted.   Was this error? is the question before us.

Viewing the evidence in its light most favorable to the plaintiff, it fairly tended to show the material facts to be as follows: At the time of his injury the plaintiff was eighty-two years of age, and was in possession of all his faculties.  His eyesight was pretty good for a person of his age, having a pair of spectacles which he wore commonly, except when reading.   His dwelling house was on the easterly side of River Street in the village of Springfield, in which house he had lived for more than twenty years.   River Street is the main highway running northerly from Springfield to North Springfield and Chester, and there is much travel over it.   The part of the street traveled by teams is about thirty-five feet in width, the surface being macadamized.   On the westerly side of the street, directly opposite the plaintiff's house, is the factory of the machine company, Gilman & Sons; and on that side, next to the macadam, is a sidewalk extending from the ": Square," so-called, northerly beyond the factory.   The plaintiff could walk and was able to go about the streets of the village, taking care of himself well.   He went out twice a day— walked down street to or beyond the "Square," and back to his home.   In doing so, he crossed the street directly in front of his house to the sidewalk on the westerly side, and then walking on that, returning home, in the inverse order over the same course.

In the afternoon of the day of the accident he went down street, and in returning had reached the point in the sidewalk, opposite his house, and had turned easterly to cross the street as usual to his home.   Before stepping off the sidewalk onto the part of the street traveled by teams, he looked both northerly and southerly to see if any teams were approaching.   From that point he had an unobstructed view of the street southerly for the distance of seventy-five feet.   He testified that he saw no team com-

ing from either direction. He then started to cross the street. When he had gone a part of the way, he was run against by a horse, attached to an express sleigh and being driven northerly over the highway by the defendant, resulting in the injuries complained of. The horse was "jogging along at a very slow trot," unseen by the plaintiff according to his testimony.

The exact ruling below was, that the negligence of the defendant was one part of the proximate cause of plaintiff's injury. This was an overruling of the motion so far as the second ground was concerned. But the court proceeded to the further ruling that the negligence of the plaintiff, in stepping off the sidewalk directly in front of the team, concurred as a proximate cause; by reason whereof the motion was granted on the first ground. Our inquiry is therefore confined to the latter question. In considering the motion, the court said the testimony of the plaintiff, also of his wife, was that, before stepping off the sidewalk, he looked both ways of the street, and it would be so taken; that having so looked, he must have been fully conversant with the situation, the nearness of the team, its situation in the highway, the rate of speed it was coming, everything; and, being so conversant, because he looked at the team and must have seen it, he stepped in front of it. In making the ruling in this respect, the court followed the holding in *Labelle* v. *Central Vt. Ry. Co.*, 87 Vt. 87, 88 Atl. 517, and in *Harrington* v. *Rutland R. Co.*, 89 Vt. 112, 94 Atl. 431, based on the evidence tending to show that the collision took place right away after the plaintiff stepped off the sidewalk, showing the team was plainly in view when he looked down the street, and consequently he must have seen it, his own testimony to the contrary notwithstanding. There can be no doubt that considerable of the evidence tended strongly so to show; but, as will be seen, there was other evidence, equally strong, more favorable to the plaintiff, the importance of which the court seems to have overlooked. One witness, the manager of the Gilman & Sons machine company, and familiar with the surroundings, testified that, as he stepped out of the door of the factory, he saw the plaintiff crossing the street to his house, and at the same time he saw the team going up the street, the horse "jogging along at a very slow trot"; that they were quite near together, but neither of them seemed to see the other. The witness further testified to seeing the horse run against the plaintiff, and to seeing the latter fall when hit; that the witness went im-

mediately to the plaintiff's relief as he lay unconscious on the ground; that the witness was there first of any one after the accident, except that plaintiff's wife, who had seen the collision from their house, got there at practically the same time. The witness testified in direct examination that plaintiff had crossed about a third of the street before he was struck by the team; and in redirect examination he testified that the team which struck the plaintiff was about in the center of the beaten path; that the beaten path was about in the center of the traveled part of the highway; and that the width of the traveled part of the highway at that point was approximately thirty-five feet.

[1] As against the motion for a verdict, the plaintiff was entitled to have the case considered and determined on the basis of this evidence. So considered, if the plaintiff had crossed a third of the street before the collision, he had gone about eleven and two-thirds feet from the sidewalk; and if the team was about in the center of the traveled part of the highway at the time of the collision, then he had gone approximately seventeen and one-half feet from the sidewalk. Having gone either of the distances named, it cannot fairly be said that when he looked both ways of the street before starting to cross, he must have seen the team coming and stepped in front of it. How fast was the defendant's horse traveling at the time in question, as compared with the speed the plaintiff, eighty-two years of age, was then traveling? What distance was in fact covered by the horse within the time occupied by the plaintiff in going from the sidewalk to the place of collision? These are questions to be considered in determining whether, at the time when plaintiff was on the sidewalk, looking up and down the street, the team was even within his field of view, and were for the jury. No controlling circumstances were shown from which it could be said as matter of law that his testimony that he saw no team coming when he so looked, could not by any possibility be true, or was so inherently impossible as not to be credible. Without such controlling circumstances being shown, the weight of his testimony in this respect was for the jury. *Sherwin* v. *Rutland R. R. Co.*, 74 Vt. 1, 51 Atl. 1089. Standing thus, there is no basis for a holding similar to that had in the Labelle Case, and in the Harrington Case, in the respect named, and those cases are not to be followed in determining the question now before us. Moreover, the testimony given by plaintiff's wife tended to show that the team was not in

sight. She testified that at the time in question she was sitting by a certain window of their house, watching out for her husband; that this window overlooks the street, and from it they "can look clear down into the 'Square'"; that when he had turned to come across the street, she saw him look up and down the road, and saw him step one foot off the sidewalk; that the road was all clear, there was not a team around that she could see.

[2] So, for the purpose of the question under review, the evidence is to be taken as showing that the plaintiff, before leaving the sidewalk, looked each way, and seeing no team, none being in sight, he started to cross the street and had gone about a third or half the way when he was run against by defendant's horse and injured. These facts being evidenced, it cannot be said as matter of law that, in making the crossing, constant vigilance was required of the plaintiff, nor that he was required to look a second time, as he proceeded , to see if teams were approaching. The degree of care and prudence to be exercised by him is measured by the care and prudence of a prudent man in like circumstances, and whether he exercised due care, measured by this rule, was a question for the jury. *Thompson* v. *National Express Co.*, 66 Vt. 358, 29 Atl. 311; *Aiken* v. *Metcalf*, 90 Vt. 196, 97 Atl. 669.

*Judgment reversed and cause remanded.*