ALFRED ZUVERINO *v.* BOSTON & MAINE RAILROAD COMPANY.

February Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, and MOULTON, JJ., and SHERBURNE, Supr. J.

Opinion filed October 3, 1928.

*Stickney, Sargent & Skeels* for the defendant.

*Barber, Barber & Miller* for the plaintiff.

SHERBURNE, Supr. J.   This is an action of tort to recover damages suffered by the plaintiff while at work in the yard of the Central Vermont Railway Company at Brattleboro, on January 29, 1924, because of having been hit by an engine of the defendant.   Four grounds of negligence were charged as follows:   (1) Failure to keep a careful lookout; (2) failure to keep train under control; (3) failure to run the train at a safe, prudent, cautious and reasonable rate of speed; (4) failure to give warning of the train's approach.   Verdict was for the plaintiff.   The only exceptions briefed are to the refusal of the trial court to direct a verdict for the defendant upon the grounds:   (1) That the evidence does not disclose that the defendant was negligent; and (2) that the evidence shows the

plaintiff guilty of contributory negligence. Only the question of contributory negligence need be considered.

Exclusive of sidings there are two main tracks through the Brattleboro yard running generally north and south and parallel to Connecticut River. South of the station these tracks are owned and cared for by the Central Vermont Railway Company. Over these tracks pass the Central Vermont trains to and from New London. The more easterly of these two tracks is used by the Boston & Maine trains from Springfield, Massachusetts. The space between the two tracks is about eight feet in width. Switch No. 1, located about 1,200 feet southerly from the station, took care of a spur track from the west side of the westerly of the two main tracks. Its switch lever is midway between the two main tracks and about four feet from the nearer rail of each.

The Boston & Maine track from the south crosses the Connecticut River somewhat over 2,000 feet south of Switch No. 1, makes a reverse curve and joins the more easterly of the two Central Vermont main tracks at Switch No. 3. Its switch lever is east of the more easterly main track and is fifty feet southerly of Switch No. 1.

Between the more easterly of the two Central Vermont main tracks and Connecticut River is a spur or "snookie" track. This track intersects the Boston & Maine track at Switch No. 4, 665 feet south from Switch No. 1. 169 feet north from Switch No. 4 is a clearance post to indicate the southerly point at which cars can be left standing on the "snookie" track. When cars are left standing on the "snookie" track as far south as the clearance post trains coming from the south over the Boston & Maine track are at first hidden from view, but the entire front of the engine can be seen by a person standing at Switch No. 1 when it is at least 623 feet away. There is another switch, called Switch No. 2, which is located east of the more easterly main track, and is about 25 feet south of Switch No. 1.

The plaintiff, a second hand of a section crew in the employ of the Central Vermont Railway Company, while near Switch No. 1 was hit by some part of the engine of train No. 75. This was a regular Boston & Maine passenger train from Springfield, Massachusetts, due in Brattleboro at 2:05 P.M.

The evidence taken most favorably for the plaintiff tends to show the following facts:

It had snowed about ten inches and at 1 P.M. the plaintiff was set to work cleaning the snow from Switch No. 1. He had a shovel and the stub of a broom. He was an experienced man. He had worked on the section for the Ceneral ·Vermont for four years, and during the past two years in the yard at Brattleboro. He had worked at Switch No. 1 a number of times. His eyesight and hearing were good. His ears were uncovered. The day was sunny, the sky was clear and the air was mild. There was no evidence of any disturbing noises or movements. He knew of and was expecting train No. 75, and had seen it come in on previous days.

Just before the accident the plaintiff was between the switch and the westerly rail of the easterly main track on which train No. 75 was to come in. He was stooped over brushing the snow out of the switch. His back was toward the Connecticut River and the easterly main track. His left side was toward the approaching train. He testified that he was listening for this train, waiting for its whistle, and that he turned his head to look for it every five seconds.

Another section hand, Hale, was just across the easterly main track opposite the plaintiff, and was cleaning the snow out of the ditch which drains from Switch No. 1 across this track. Another section hand, a Pollock, was cleaning Switch No. 2, and two section hands, Pellegrino and Amato, were working at Switch No. 3. All were expecting train No. 75 and were listening and looking for it while they worked. There were freight cars on the "snookie" track which obstructed the view of the train as it approached, but there was no evidence that they were stationed south of the clearance post. Hale testified that from where he stood he could have seen the train for 500 feet. The undisputed evidence of the defendant is to the effect that the plaintiff could have seen the train for at least 623 feet.

Before the train came into the yard the steam had been shut off and it was coasting. The engineer was at his seat on the right of the cab looking ahead, and the fireman was at his seat at the left also looking ahead. Both were experienced trainmen and familiar with the Brattleboro yard. Both saw the section hands when 500 or 600 feet away, but as the train advanced the engineer's view of the plaintiff was cut off by the boiler when about 200 feet away. Although defendant's evidence was to the effect that when the engineer and fireman first

saw the section men, they were all, including the plaintiff, standing clear of the track, and that the plaintiff stepped back in front of the train just as it was "right on top of him," we must take the fact to be as plaintiff's evidence tends to show, that during all the time the train was approaching the plaintiff was stooped over at his work between the switch and the track, with his left side toward the approaching train. Neither Hale nor the plaintiff saw or heard the train. Pellegrino at Switch No. 3, 50 feet southerly from where the plaintiff was working, first saw the train when about 75 or 80 feet from him. He and Amato shouted "Look out, look out" when the train was 30 feet away, according to a custom to shout to each other when they saw a train. The plaintiff heard them and was hit just as he was starting to rise up. About 5 feet before the plaintiff was hit the fireman shouted and the engineer applied the emergency brake.

■ There was a sharp conflict in the evidence as to whether the whistle was blown for the station and as to whether the bell was ringing when the train came into the yard. The testimony of the plaintiff, Hale and Pellegrino, stationed as they were, that they were listening and heard no whistle nor bell, tends in a measure to show that no whistle was sounded nor bell rung. *Lefebvre's Admr.* v. *Central Vermont Railway Co.*, 99 Vt. 366, 374-376, 133 Atl. 359; *Barney's Admx.* v. *Quaker Oats Co.*, 85 Vt. 372, 386, 387, 82 Atl. 113; Wig. Ev. (2nd ed.) § 664.

■ The plaintiff claimed in argument that there was a custom in the Brattleboro yard for trains to give warning of their approach to workmen on the track. The only evidence of such a custom came from the plaintiff. He did not speak directly to the point. What he did say was that at other times when he was at work on these switches "always the bell was ringing." It was shown by defendant's witness Anderson that the bell would be ringing, not to warn workmen, but to warn persons in and around the station. The plaintiff was evidently talking about just what Anderson was. This is not evidence of a custom to warn workmen. No other witnesses referred to a custom. Nothing was said about it in the charge. The transcript shows that no claim was made that a custom changed the ordinary rule governing the case.

This train usually passed the place of the accident at from 15 to 20 miles per hour. On this occasion the evdence taken most favorably for the plaintiff does not reasonably tend to show a speed in excess of from 20 to 25 miles per hour. The train was approximately on time. The plaintiff could have seen the engine when at least 623 feet away. If the train was traveling at the rate of 25 miles per hour or 36⅔ feet per second, it would have taken it nearly 17 seconds to reach him after coming into view. He did not see it, so he could not have looked as he testified. Pellegrino shouted when the train was 30 feet from him and therefore 80 feet from the plaintiff. The plaintiff heard him. If the train was going 25 miles per hour the plaintiff had a little over 2 seconds to take one step to safety to avoid the 2½ feet of overhang of the train.

█ Knowing of this particular train and that it was due and likely to come in any minute, it was the duty of the plaintiff to keep a constant lookout for its approach so that he might step aside out of danger. Had he been reasonably diligent in the performance of this duty he would have seen the engine in ample season to avoid injury. His failure to discharge that duty makes him guilty of negligence which contributed to the accident. *Wallace's Admr.* v. *Fox, Receiver Rut. St. Ry. Co.*, 81 Vt. 136, 140, 69 Atl. 665, and cases there cited; also, *Toledo, St. Louis & Western R. R. Co.* v. *Allen*, 276 U. S. 165, 72 L. ed. (Adv. Sheets) 267, 48 Sup. Ct. 215; *Carlson* v. *Cincinnati S. & M. R. R. Co.*, 120 Mich. 481, 79 N. W. 688; *St. Jean* v. *Boston & M. R. R. Co.*, 170 Mass. 213, 48 N. E. 1088; *Lynch* v. *Boston & A. R. R. Co.*, 159 Mass. 536, 34 N. E. 1072; *Connelly* v. *Central Vermont Ry. Co.*, 77 N. H. 280, 90 Atl. 788. Also see notes 6 L. R. A. (N. S.) 646.

█ Nor does the doctrine of the last clear chance avail the plaintiff. There was no time when the trainmen could avert the accident and the plaintiff could not. The negligence of the plaintiff was operative up to the very instant of the accident. *Trow* v. *Vermont Central R. R. Co.*, 24 Vt. 487, 494-496, 58 A. D. 191; *French* v. *Grand Trunk Ry. Co.*, 76 Vt. 441, 447, 58 Atl. 722; *Flint's Admr.* v. *Central Vermont Ry. Co.*, 82 Vt. 269, 276, 73 Atl. 590; *Aiken* v. *Metcalf*, 92 Vt. 57, 59, 102 Atl. 330; *La Mountain's Admx.* v. *Rutland R. R. Co.*, 93 Vt. 21, 25, 106 Atl. 517; *Miller* v. *Central Vermont Ry. Co.*, 95 Vt. 69, 72,

113 Atl. 524; *Dent, Admr.* v. *Bellows Falls & Saxtons River St. Ry. Co.,* 95 Vt. 523, 529, 116 Atl. 83; *Lachance, Admr.* v. *Myers,* 98 Vt. 498, 505, 129 Atl. 172.

*Judgment reversed and judgment for the defendant to recover its costs.*