MARJORIE BATES v. RUTLAND RAILROAD COMPANY.

February Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 2, 1933.

*Edwin W. Lawrence* and *Frank C. Archibald* for the defendant.

*E. J. Hall* and *Fenton, Wing, Morse & Jeffords* for the plaintiff.

GRAHAM, J.　　　The plaintiff brings this action to recover damages for injuries which she sustained in a railroad crossing accident.　The accident occurred on October 13, 1931, at about 1.30 P.M., when an automobile driven by the plaintiff collided with an engine drawing a freight train of eighteen cars in a westerly direction over defendant's main line.　It is not questioned that the verdict establishes negligence on the part of the defendant for failure to give the usual crossing signals with bell or whistle.　The defendant by appropriate exceptions presents for review the question of the plaintiff's contributory negligence as a matter of law.　In the consideration of this question, we are to be guided and governed by principles well established in our cases.　The plaintiff has the burden of showing freedom from contributory negligence (*Shumm's Admx.* v. *Rutland Railroad Co.,* 81 Vt. 186, 192, 69 Atl. 945), but the question is not one of law for the court unless it appears from undisputed facts, from the plaintiff's own evidence, that she was not in the exercise of that degree of care which a careful and prudent person would exercise in circumstances of like exposure

and danger. *Carter* v. *Central Vermont Railroad Co.*, 72 Vt. 190, 192, 47 Atl. 797. If the evidence, taken in the light most favorable to the plaintiff, is of such quantity and character that reasonable minds might draw different conclusions respecting the plaintiff's fault, then the issue was properly submitted to the jury. *Wellman, Admr.* v. *Wales,* 98 Vt. 437, 448, 129 Atl. 317; *Carter* v. *Central Vermont R. R. Co., supra; Sherwin* v. *Rutland R. R. Co.,* 74 Vt. 1, 4, 51 Atl. 1089; *Shields et al.* v. *Vermont Mutual Fire Insurance Company,* 102 Vt. 224, 237, 147 Atl. 352.

 The accident occurred at the Sunderland crossing, where the highway leading from East Arlington to Manchester crosses three railroad tracks of the defendant at grade. The record treats of the highway at this crossing as running north and south, and the tracks as extending east toward Manchester, and west toward Bennington. The main line is the most northerly track; next to it is a passing track, and the one farthest south is a spur track. The distance from the south rail of the spur track to the south rail of the main line is 24 feet. The plaintiff approached the crossing from the south. That conditions there existing presented a situation of danger is apparent. The view of the tracks easterly and westerly from the crossing to one so approaching was considerably restricted by obstructions. The tracks to the east run through a cut, which, on the south, is about sixteen feet high, and extends close to the tracks at the crossing. The view to the west was more or less obstructed by trees, and also by two box cars on the spur track west of the crossing. From a point 150 feet south of the crossing, a traveler could see at different times and at different places the track to the west for a considerable distance, except the part directly north of the two box cars, a space of 70 to 80 feet. As one approached to a point about 42 feet south of the south rail of the main line, the view to the west was almost wholly obstructed by these cars. Until that point was reached there was no effective view of the tracks to the east.

The plaintiff approached the crossing with her car in second gear and at a speed of 5 to 10 miles an hour. She was familiar with the crossing, having driven over it many times, and as she proceeded toward it, she was looking and listening for approaching trains. Until she reached the point 42 feet south of the main track, her looking was directed towards the west, her view

to the east up to that time being obstructed by the high embankment. She then looked towards the east. Just how long the plaintiff looked in that direction at this point, what she saw, or must have seen if she looked, was sharply contested at the trial, and much space is taken in the briefs to indicate to us the tendency of the evidence, particularly the plaintiff's own testimony, on that issue. Though the testimony of the plaintiff was confusing in its contradictions and inconsistencies, it was still for the jury to weigh and consider. *Robey* v. *B. & M. Railroad,* 91 Vt. 386, 388, 100 Atl. 925; *McDonald* v. *McNeil,* 92 Vt. 356, 361, 104 Atl. 337; *Shields et al.* v. *Vermont Mutual Fire Insurance Company,* 102 Vt. 224, 237, 147 Atl. 352; *Webster* v. *Canadian Pacific Ry. Co.,* 103 Vt. 460, 467, 156 Atl. 524. If, as the defendant contends, the plaintiff continued looking towards the east until she was on the spur track (she so stated in reply to questions both by counsel and the court), she had a clear view of the track for a distance of over 600 feet; the train was then in her sight, and must have been seen by her in ample time to have stopped her car and avoided the collision. In these circumstances contributory negligence would be imputed to her as a matter of law. *Labelle* v. *Central Vermont Ry. Co.,* 87 Vt. 87, 91, 88 Atl. 517; *Harrington* v. *Rutland Railroad Co.,* 89 Vt. 112, 120, 94 Atl. 431. The plaintiff's statements in her testimony to the effect that she last looked towards the east when she was on the spur track were informal admissions, to be sure, but, unlike judicial admissions, they were not conclusively controlling against her, as a matter of law. *Wiley* v. *Rutland Railroad Co.,* 86 Vt. 504, 508, 86 Atl. 808. A careful analysis of the plaintiff's testimony shows that the jury, acting reasonably, might have found these facts: That when the plaintiff was 42 feet south of the main track, she looked east and had a view of the track in that direction to the passing switch, a distance of 302 feet; that no train was in sight; that she listened and heard none; that her view to the west from that point was obstructed by the box cars on the spur track; that after looking towards the east, she immediately turned her attention to the west and continued to look in that direction until she had passed the northeast corner of the easterly box car, where she had a clear view of the main track to the west for a distance of over 1,200 feet; that she was then on the spur track and about 17 feet from the south rail of the main track; that she again looked to-

wards the east, and the train was very close to the crossing; that she applied her brakes, but too late to prevent her car from hitting the engine just back of the pilot. The distances from the main track just stated indicate the plaintiff's position. The front of her car was in each instance 6 feet, 9 inches nearer the track. The overhang of the train was 2½ feet. The plaintiff's car when traveling at a speed of 5 to 10 miles an hour could be stopped within 13½ feet after application of the brakes.

This court has many times stated what conduct was required of the plaintiff to avoid the imputation of contributory negligence. The rule is fully stated in *Harrington* v. *Rutland Railroad Co.*, 89 Vt. 112, 118, 119, 94 Atl. 431. It was the duty of the plaintiff as she neared the crossing to look and listen for approaching trains, and, if necessary to enable her to listen effectively, to stop to listen. Duty required her to continue to look and listen as she approached the track until the last moment when the discovery of the train would have availed for her protection. She was chargeable with such knowledge of the approach of the train as she might have obtained by such vigilant use of her senses as a careful and prudent person would make in the circumstances. If by the vigilant use of her sight and hearing, she might have discovered and avoided the danger, and she omitted such vigilance, she was guilty of contributory negligence. *Manley* v. *D. & H. Canal Co.*, 69 Vt. 101, 37 Atl. 279; *Carter* v. *C. V. Ry. Co.*, 72 Vt. 190, 47 Atl. 797; *Goodwin, Admx.* v. *Gaston et al.*, 103 Vt. 357, 363, 154 Atl. 772. If her vision was obstructed she should have been especially vigilant as regards her hearing. *Shumm's Admx.* v. *Rutland R. R. Co.*, 81 Vt. 186, 182, 69 Atl. 945, 19 L. R. A. (N. S.) 973.

We must not overlook the fact that the plaintiff was beset with many dangers. About 60 feet south of the crossing she passed an intersecting highway from the west, which required her to be watchful for possible approaching highway traffic from that direction; her effective view of the tracks to the west, as we have seen, was interrupted as she approached nearer to the crossing, and she was required to be as vigilant for trains from that direction as from the east; her view of the highway over which she was traveling was obstructed a short distance northerly of the crossing by a sharp curve, and she was required to be watchful for traffic which might be approaching her from that direction.

In these circumstances can it be said that the plaintiff was guilty of contributory negligence, as a matter of law, in looking to the west and not to the east during the space of time required for her to travel from a point 42 feet south of the main track to a point 17 feet south of it? We think not. At most, the time was only a few seconds. See *Kinghorn* v. *Pennsylvania R. Co.*, (U. S. C. C. A. N. Y.) 47 Fed. (2d) 588. Having taken as effective a view to the east as the situation allowed, it was only natural that the last look should be towards the west, since the view in that direction had just been wholly obstructed. In these circumstances she had a right to rely somewhat upon the statutory signals being given by a train approaching so closely to the crossing. Although the failure of the defendant to sound the whistle or ring the bell did not excuse the plaintiff from the exercise of due care for her safety, it is a circumstance to be taken into consideration in determining whether she exercised the requisite care or not; for negligence cannot be imputed to one who is deceived by circumstances calculated to mislead a prudent person. *Lefebvre's Admr.* v. *Central Vermont Ry. Co.*, 97 Vt. 342, 350, 123 Atl. 211; *Boyden* v. *Fitchburgh R. R. Co.*, 72 Vt. 89, 93, 47 Atl. 409.

The evidence discloses that as the train approached the crossing the engine was working steam, which made a noise called "puffing"; that the movement of the train over the rails made a noise called a "rumble." It is urged that the nature and extent of these sounds is common knowledge, and that the cut would act as a funnel to accentuate them in the direction of the plaintiff. These are strong circumstances tending to show that the plaintiff did not listen, or if she did, she must have heard the train. But we cannot say that they are so controlling that it was a physical impossibility for her to be listening and not hear the train, even though her hearing was not shown to be impaired. See *Hammond* v. *Harjohn,* 95 Vt. 308, 312, 115 Atl. 100; *Jasmin* v. *Parker et al.,* 102 Vt. 405, 413, 148 Atl. 874; *LaBelle* v. *Central Vermont Ry. Co.,* 87 Vt. 87, 92, 88 Atl. 517. It was for the jury to say whether she made such a vigilant use of her sense of hearing as a prudent person would have made under the circumstances, and whether she did in fact hear the train in time to avoid the accident.

The defendant argues that, if the plaintiff's sight and hearing were obstructed by conditions at the crossing, the

law required her to *stop* to look and listen when she reached the spur track, where she had an effective view of the track in both directions. Under some circumstances the duty to stop may be required as a matter of law, but the necessity for such a precaution is usually a question for the jury. *Manley* v. *D. & H. Canal Co.,* 69 Vt. 101, 104, 37 Atl. 279; *Carter* v. *Central Vermont R. R. Co.,* 72 Vt. 190, 193, 47 Atl. 797. The question was for the jury in this case. We can look back upon this accident now and say that such a precaution by the plaintiff would have saved her. But that is not the test. The conduct required of her under the prudent man rule must be determined in the light of her then situation.

The application of the "stop" rule, as a matter of law, would require the plaintiff, absolutely, to stop her car upon one of the defendant's tracks at a time when a prudent person might remain on any one of them only long enough to get across. True, this was a spur track, but if the plaintiff had stopped upon it at a point where she could look past the box cars the front of her automobile would have been within the danger zone of the passing track, and there is nothing in the record to show that the plaintiff then knew the character and use of any of the tracks, or which one might in all probability be occupied by an approaching train. In the circumstances here shown the plaintiff's duty in this respect was a jury question. We therefore hold that the case was fairly for the jury on the issue of contributory negligence.

At the close of the defendant's evidence, the court, subject to defendant's exception, permitted the plaintiff to file an amendment to her complaint in which it is alleged, in substance, that after the plaintiff was placed in a perilous position on the crossing without knowledge of the approach of the train, the trainmen, knowing her situation, could, in the exercise of due care, have prevented the accident by sounding an additional blast of the whistle to warn her of the approach of the train, at a time when she could have taken effective action for her own protection. The amendment was treated as a count under the doctrine of the "last clear chance," and that issue was submitted to the jury, subject to defendant's exceptions. It is not alleged or claimed that the train could have been stopped after the trainmen discovered the plaintiff's peril. In line with the amendment the court charged:

"If you find that if these extra signals had been given seasonably and you are satisfied that that would have prevented the accident, then if the plaintiff did not continue to be negligent from then on, the plaintiff might recover, although you find that the required statutory signals were blown."

 We hasten to state right here, lest what we say later should imply approval, that the exceptions do not cover the substance of the charge just quoted, but only whether the record justifies the submission of any such issue to the jury. So, right or wrong, we must accept the rule adopted as the law of the case. *Sharby* v. *Town of Fletcher*, 98 Vt. 273, 278, 127 Atl. 300.

 The rule of the last clear chance, as expressed in our cases, is familiar, but there is frequent confusion in the application of it. The last statement of the doctrine was by Justice Taylor in *Lachance, Admr.* v. *Myers*, 98 Vt. 498, 505, 129 Atl. 172, and need not be repeated. See also, *Dent, Admr.* v. *Bellows Falls & Saxtons River St. Ry. Co.*, 95 Vt. 523, 529, 116 Atl. 83; *Miller* v. *Central Vermont Ry. Co.*, 95 Vt. 69, 72, 113 Atl. 524; *LaMountain's Admx.* v. *Rutland Railroad Co.*, 93 Vt. 21, 25, 106 Atl. 517; *Aiken* v. *Metcalf*, 92 Vt. 57, 59, 102 Atl. 330; *Flint's Admr.* v. *Central Vermont Ry. Co.*, 82 Vt. 269, 276, 73 Atl. 590; *French* v. *Grand Trunk Ry. Co.*, 76 Vt. 441, 446, 58 Atl. 722; *Trow* v. *Vermont Central R. R. Co.*, 24 Vt. 487, 494-496, 58 A. D. 191. Our rule applies the proximate cause test. There can be no recovery if the plaintiff's negligence is concurrent and proximately cooperates in producing the injury. In such case, the last chance rule has no application. See *Zuverino* v. *Boston & Maine R. R. Co.*, 101 Vt. 261, 269, 143 Atl. 308. The doctrine presupposes a perilous situation, created or existing through the negligence of both plaintiff and defendant, but assumes that there was a time after such negligence has occurred when the defendant could, and the plaintiff could not, by use of the means available, avert the accident. *Lachance, Admr.* v. *Myers, supra.*

 The engineer was in his seat on the north side of the cab and could not see the plaintiff approach the crossing. The brakeman and fireman first saw her when the front of the engine was about 90 feet east of the crossing. Both almost im-

mediately shouted to the engineer and he applied the emergency brake. The plaintiff was then on the passing or middle track. We do not overlook that the brakeman testified that when he first saw plaintiff she was 45 or 50 feet south of the main track. This was merely an estimate, and its inaccuracy is shown by the undisputed facts of record. It is wholly unreliable, and cannot stand as a basis for computing time for effective action, either by the trainmen or the plaintiff. The location of the plaintiff with reference to objects on the ground, when the witness first discovered her peril, is more consistent and reliable, and fixes her distance from the main track with approximate accuracy. It was from 11 to 13 feet. For a time after the trainmen first saw the plaintiff, they had a right to assume that she would stop, and not drive onto the crossing in front of the train. *LaMountain's Admx.* v. *Rutland R. R. Co., supra.* Upon any reasonable view of the evidence the time for action was from 2 to 4 seconds. It is problematical, on this record, to say what time was required for the brakeman or fireman to direct the engineer to sound the whistle and for him to respond with that signal. Just where the plaintiff would be when that was accomplished and her reaction thereto, in view of the time element involved, is pure speculation. She might, as she says in her brief, have applied the brake, without taking time to look, and stopped; or, she might, in her excitement, have done the wrong thing, increased her speed, and got killed. No one can say with any assurance that an additional blow of the whistle would have saved her. A verdict in her favor predicated upon the testimony that an "extra blast" was not given would have no substantial support. It would be based upon mere speculation and conjecture and could not stand. *Goodwin, Admx.* v. *Gaston,* 103 Vt. 357, 364, 154 Atl. 772; *Wellman* v. *Wales,* 98 Vt. 437, 440, 129 Atl. 317; *Wellman* v. *Wales,* 97 Vt. 245, 255, 122 Atl. 659; *Cummings, Admr.* v. *Town of Cambridge,* 93 Vt. 349, 352, 107 Atl. 114; *Gilman* v. *Central Vermont Ry. Co.,* 93 Vt. 340, 349, 107 Atl. 122, 16 A. L. R. 1102.

The plaintiff's argument not only assumes accuracy of reaction, but ignores the "natural limitations on the speed of the mental and physical activities of human beings." Compare *Morrison* v. *Boston & M. R. R.,* (N. H.) 164 Atl. 553, 556.

In accident cases, we are frequently met with "niceties and assumptions" of mathematical calculations based upon mere

estimates of speed and distances to indicate time for saving action. Realizing the inherent errors likely to result from such computations and the variant responses of prudent men when faced with impending danger, courts should be slow to apply to such calculations hard and fast rules of conduct, especially when the time, as computed, is only a very few seconds.

If the plaintiff was negligent in failing to discover the train by the vigilant use of her senses, and in the discussion of this question we must assume that she was, her negligence was active and continued to the instant of collision, or until it was too late for her to avert it. Thus, the plaintiff's negligence was a contributory factor in producing her injuries, and there was no room for the application of the doctrine of the "last clear chance," even under the theory adopted by the trial court. It was error to submit that issue to the jury. See *Sherwin* v. *Rutland R. R. Co.,* 74 Vt. 1, 9, 51 Atl. 1089.

Other exceptions are briefed by the defendant but they present questions of minor consequence. We have examined them and find that they are either without merit, or, in the circumstances shown, if error appears, it was quite harmless. The same questions are not likely to arise on a retrial, so it will serve no useful purpose to discuss them.

*Judgment reversed, and cause remanded.*